*In re* ANA J. RODRÍGUEZ ORTIZ, querellada.

*Número:* MC-88-53          *Resuelto:* 6 de abril de 1994

*Rafael Ortiz Carrión, Procurador General, y Eliadís Orsini Zayas, Procuradora General Auxiliar,* abogados de El Pueblo.

PER CURIAM: El 18 de agosto de 1988 referimos al Procurador General de Puerto Rico una declaración jurada prestada por el Lcdo. Carlos A. Cabán, entonces Director del Panel Central de este Tribunal, en torno a la conducta profesional observada por parte de la Lcda. Ana J. Rodríguez Ortiz. Éste, después de realizar la correspondiente investigación, rindió un informe el 22 de septiembre de ese mismo año.([1])

## I

La investigación reveló que el 16 de agosto de 1988 la Lcda. Ana J. Rodríguez —abogada de una parte en un recurso ante la consideración de este Tribunal— llegó al Tribunal Supremo y, luego de identificarse con el Alguacil Julio Rivera, pidió comunicarse con el licenciado Cabán.([2]) Durante la conversación que sostuvieron éstos, ella le informó que era abogada en el caso CE-88-409([3]) *y que uno de los abogados de la parte contraria había manifestado que su recurso no tenía oportunidad alguna a nivel del Tribu-*

([1]) Del informe se desprende que en la investigación el Procurador General entrevistó a los Lcdos. Francisco Díaz Herrero, Iván Durant Sierra, Juan Guijarro Turrull, Fausto Ramos Quirós, Gabriel A. Oliveras, Carlos Cabán García (Oficial Jurídico de este Tribunal), Ana J. Rodríguez y a la Sra. Edna Santiago. Se entrevistó, además, a los alguaciles Julio Rivera Morales, José Álvarez González, Rafael Rivera Figueroa y Pablo Robles Buyá; a la Sra. Elizabeth Fuentes y al Sr. Luis R. Amaral.

([2]) Primeramente, la licenciada Rodríguez solicitó entrevistarse con el Lcdo. Gabriel Oliveras, Oficial Jurídico de la Hon. Juez Naveira de Rodón; fue informada que éste ya no trabajaba en este Tribunal. *Surge del expediente que la licenciada Rodríguez no conocía personalmente al licenciado Oliveras ni al licenciado Cabán.*

([3]) El recurso ante nuestra consideración (CE-88-409) trataba sobre la división de una comunidad hereditaria, en la cual el tribunal de instancia ordenó la venta de una propiedad sin que alegadamente mediara tasación ni subasta pública. Surge del expediente del caso que el 18 de agosto de 1988 este Tribunal emitió una orden de mostrar causa dirigida al demandante para que argumentara su posición en cuanto al recurso radicado. El 12 de enero de 1989, y luego de reevaluar el recurso presentado a la luz de la comparecencia de la parte demandante, este Tribunal declaró el mismo no ha lugar. Mociones de reconsideración fueron declaradas no ha lugar el 16 de febrero de 1986 y el 21 de marzo de 1987, respectivamente.

*nal Supremo porque "todo estaba arreglado". Ésta manifestó, además, que tenía una profunda preocupación porque no se le hiciera justicia a su cliente.* El licenciado Cabán le señaló a la licenciada Rodríguez "que [l]e era imposible discutir dicho caso con ella y que según [su] experiencia, todos los recursos son estudiados de forma responsable por los Jueces". Informe, pág. 3.

El 17 de agosto de 1988, el licenciado Cabán se comunicó con la licenciada Rodríguez con el propósito de indagar más sobre lo narrádole por ésta el día anterior. La licenciada Rodríguez le informó que ella no había escuchado personalmente las declaraciones referentes a que "todo estaba arreglado" ante este Tribunal, pero que las mismas habían sido escuchadas por una tercera persona, la Sra. Edna Santiago, quien las escuchó del Lcdo. Juan Guijarro Turrull, quien era uno de los abogados en el referido caso.([4])

En la investigación realizada por el Procurador General, la licenciada Rodríguez declaró *que ella estaba arrepentida y que creía que había actuado pasionalmente bajo al impresión de estar haciendo todo lo mejor por su cliente.* Ante toda la prueba recopilada, el Procurador General concluyó que

> ... en cuanto a la conducta de la Lcda. Ana J. Rodríguez consideramos la misma altamente lesiva a la integridad del Tribunal y con el propósito directo o indirecto de afectar el proceso legítimo de este Honorable Tribunal al atender los recursos ante su consideración. Informe, pág. 48.

Estando en condiciones de resolver el asunto ante nuestra consideración, procedemos a así hacerlo.

---

([4]) El licenciado Cabán, el 18 de agosto de 1988 y luego de haberle informado lo sucedido al entonces Juez Presidente de este Tribunal, prestó una declaración jurada ante el Secretario General del Tribunal exponiendo los hechos ocurridos el 16 de agosto, referente a la conversación sostenida el día de la visita de la licenciada Rodríguez Ortiz, y a la del día posterior a éste.

Referente a este punto, el licenciado Guijarro *negó rotundamente* haber hecho estas expresiones; por su parte, la Sra. Edna Santiago declaró que había oído las referidas expresiones en el acto de desahucio llevado a cabo a nivel de instancia.

## II

■ Señalamos, de entrada, que la conducta de la licenciada Rodríguez al visitar al licenciado Cabán con la intención de expresarle sus preocupaciones referente a un recurso presentado ante este Tribunal, fue una *imprudente* e *impropia*, o, cuando menos, *totalmente improcedente* a la luz de los Cánones 9 y 11 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX. El Canon 9 del Código de Ética Profesional, *supra*, exige de todo abogado un deber de "observar para con los tribunales una conducta que se caracterice por el mayor respeto"; a iguales efectos, el Canon 11 del Código de Ética Profesional, *supra*, prohíbe que todo abogado se comunique con un juez referente a un asunto ante su consideración.([5])

■ Uno de los objetivos que persiguen los cánones de ética profesional es tener en los abogados los máximos exponentes del respeto y exaltación del foro judicial. Véase *In re Martínez, Jr.*, 108 D.P.R. 158 (1978). El abogado nunca debe olvidarse que es un funcionario que tiene la obligación de mantener y promover inmaculada la imagen de la justicia. *Coll Moya v. Alcaide, Cárcel Municipal*, 89 D.P.R. 225 (1963). A esos efectos, en *In re Rodríguez Torres*, 104 D.P.R. 758, 766 (1976), expresamos que:

> No obstante, la justicia debe ser inmaculada no sólo en su realidad sino también en su apariencia externa. Dicho principio está encarnado en diferentes disposiciones del Código de Ética Profesional. *La prohibición establecida en el Canon 11 respecto a las influencias o presiones indebidas hacia jueces debe inter-*

---

([5]) El Canon 11 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, establece:

"Las marcadas atenciones y la hospitalidad inusitada por parte de un abogado hacia un juez traen consigo equívocas interpretaciones sobre los motivos tanto del juez como del abogado y deben evitarse. Un abogado no debe comunicarse ni discutir con el juez en ausencia de la otra parte sobre los méritos de un caso pendiente, y merece ser reprendido por cualquier acción encaminada a obtener especial consideración personal de un juez. Sumo cuidado debe tener el abogado que ocupa un cargo público o político en abstenerse de tratar de ejercer influencia o presión indebida en la tramitación de cualquier asunto sometido a la consideración judicial."

*pretarse a la luz de lo anterior como que prohíbe también cualquier actuación que diese lugar a una apariencia de indebidas influencias.* En nuestro sistema de gobierno, "donde la voluntad del pueblo es la fuente del poder público [y] donde el orden público está subordinado a los derechos del hombre", la confianza del pueblo en su sistema de justicia es de vital importancia para el mantenimiento de la armonía social y esto le impone a cada abogado, en cada instante de su gestión profesional, la más cuidadosa auto-disciplina de forma que evite siempre aun la más leve apariencia de actuaciones indebidas. (Énfasis suplido.)

El pretender ejercer influencia —expresa o sutil, real o imaginaria— sobre organismos administrativos o judiciales adjudicativos y sus funcionarios, es incurrir en conducta impropia. Véase *In re Franco Soto*, 115 D.P.R. 740, 752 (1984). Es, además, altamente improcedente que un abogado se comunique con un juez, o algún ayudante de éste, con el propósito de hablarle de un caso ante su consideración, por tener esta actuación, *aun cuando menos en apariencia*, el efecto de afectar el proceso decisorio del tribunal. Reiteradamente hemos expresado que el Código de Ética Profesional "exige al abogado ... que esté consciente de la importancia de evitar aun la apariencia de conducta impropia". *In re Franco Soto, supra*, pág. 752. *Todo abogado debe evitar toda actuación o conducta que pueda dar base a la creencia de que se ejerce o se pretende ejercer influencias en el ánimo de un juzgador.*

En el caso ante nos, aunque la licenciada Rodríguez no se comunicó directamente con ningún juez, su actuación podría considerarse dirigida a pretender influir —*de manera indirecta y sutil*— en el proceso decisorio de este Foro. Aunque la actuación no haya sido una mal intencionada, la misma puso, innecesaria e irresponsablemente, en entredicho el prestigio e integridad de este Tribunal; *conducta que es una altamente reprobable.*

En vista a ello, y atendido el hecho del genuino arrepentimiento de la licenciada Rodríguez por la situación por ella causada, somos del criterio que procede, como sanción

disciplinaria, únicamente censurar a la licenciada Rodríguez.

*Se dictará sentencia de conformidad.*

Los Jueces Asociados Señor Negrón García y Señor Alonso Alonso no intervinieron.