*In re* MARÍA J. BUSÓ ABOY, querellada.

*Número:* AD-2003-1     *Resuelto:* 26 de octubre de 2005

*Ramón Rodríguez Cintrón* y *Fernando L. Torres Ramírez*, abogados de la parte querellada; *María Victoria López Menéndez* y *Eva Dolores Vives Figueroa*, asesoras legales de la Oficina de Administración de los Tribunales; *Flavio E. Cumpiano Villamor*, presidente en función de la Comisión de Disciplina y de Separación del Servicio por razón de Salud de Jueces del Tribunal de Primera y del Tribunal de Circuito de Apelaciones; *Aida N. Molinary De la Cruz*, presidenta de la Comisión de Disciplina y de Separación del Servicio por Razón de Salud de Jueces del Tribunal de Primera y del Tribunal de Circuito de Apelaciones; *Delia Lugo Bougal*, comisionada asociada de la Comisión de Disciplina y de Separación del Servicio por Razón de Salud de Jueces del Tribunal de Primera y del Tribunal de Circuito de Apelaciones.

PER CURIAM: La Lic. María J. Busó Aboy fue admitida al ejercicio de la abogacía el 1 de marzo de 1990. El 21 de noviembre de 1990 juramentó como Juez Municipal del Tribunal de Primera Instancia. Posteriormente, el 12 de febrero de 1996, se le extendió un nuevo nombramiento por un segundo término de ocho años como Juez Municipal. Desde entonces ejerció su cargo en varias de las regiones judiciales del país hasta que renunció al cargo el 2 de septiembre de 2003.

El caso de autos tiene su génesis en una querella presentada por la Oficina de Administración de los Tribunales contra Busó Aboy, por hechos ocurridos mientras fungió como juez en el Tribunal de Primera Instancia, Sala Municipal de Cidra.[1] A la fecha de su renuncia estaba pendiente el procedimiento disciplinario que se llevaba en su contra por los hechos que dieron lugar a la controversia ante nos.

Luego de celebradas las vistas de rigor, el 2 de diciembre de 2004 la Comisión de Disciplina y de Separación del Servicio por Razón de Salud de Jueces del Tribunal de

---

[1] La licenciada Busó Aboy fue asignada a la Sala Municipal del Tribunal de Primera Instancia de Cidra mientras la ex juez Nilda Cruz Aponte —juez asignada a dicho tribunal— se encontraba de vacaciones.

Primera Instancia y del Tribunal de Circuito de Apelaciones (Comisión) emitió su informe final sobre la querella presentada. Del referido informe surge el trasfondo fáctico que exponemos a continuación.

## I

El 15 de mayo de 2001 le fue expedido al vehículo de motor propiedad de la licenciada Busó Aboy un boleto de $15 —en concepto de falta administrativa de tránsito— debido a que, alegadamente, *estaba estacionado en una línea amarilla en la Avenida Ponce de León en San Juan.*

Días más tarde, el 24 de mayo de 2001, mientras la querellada se encontraba en la Secretaría del Tribunal de Primera Instancia de Cidra, le comentó a la secretaria auxiliar, Magaly Colón Mendoza, y al mantenedor de área, Daniel Mercado Aponte, que le habían expedido el antes mencionado boleto. De igual forma, les informó su intención de presentar, ante el referido tribunal de Cidra, un Recurso de Revisión de Falta Administrativa de Tránsito.

En virtud de lo anterior, Mercado Aponte le facilitó un formulario para que pudiera presentar su recurso de revisión.[2] Busó Aboy *solicitó de éste* que cumplimentara el recurso de revisión para que no apareciera su letra en el documento y le entregó el boleto de falta administrativa. Mercado Aponte llenó los blancos relacionados con la descripción del vehículo, la tablilla, la sección de ley de la falta administrativa, el número del boleto, la fecha de la expedición del boleto y el lugar donde ocurrió la falta administrativa.

Los fundamentos para impugnar la falta administrativa y la dirección de la parte recurrente fueron suplidos directamente por Busó Aboy. Mercado Aponte también llenó el

---

[2] Este es el formulario O.A.T. — Recurso de Revisión Bajo la Ley 111 de 1964, Falta Administrativa de Tránsito, según enmendada por la Ley 124 del 2 de junio de 1976.

epígrafe del recurso de revisión, escribiendo el nombre de la parte recurrente como María J. Busó Aboy y, *por instrucciones de la juez, él mismo firmó el recurso de revisión como "María Busó".*

Habiendo cumplimentado el recurso, Mercado Aponte se lo entregó a Colón Mendoza, quien al observar el boleto se percató que no había sido expedido en Cidra sino en San Juan. En virtud de lo anterior, ésta le señaló a Busó Aboy que posiblemente no podría presentar el recurso de revisión en el Tribunal de Primera Instancia de Cidra. No obstante, Busó Aboy le indicó *que ella entendía* que no habría problemas con su presentación y, por ello, le *instó* a presentarlo. Colón Mendoza procedió a así hacerlo y, entonces, le imprimió el sello de hora y fecha de presentación ("10:30 Mayo, 24, 2001") y lo entró en el Libro de Radicaciones con el número ECCI2001-00109.

*Ese mismo día,* Mercado Aponte buscó el formulario Resolución de Recurso de Revisión de Falta Administrativa de Tránsito. Estando las tres personas antes mencionadas presentes en Secretaría, Mercado Aponte escribió en el formulario de Resolución el nombre "María Busó", como recurrente, y llenó la información referente a la tablilla, el número del boleto y el número de la licencia. Colón Mendoza anotó el número de recurso de revisión. La entonces juez Busó Aboy hizo unas cruces (X) al lado de unas líneas, señalando así las razones que daban lugar a la Resolución, *declarando "con lugar" el recurso de revisión y ordenando eliminar el gravamen de la licencia.*

Busó Aboy firmó esa Resolución el 24 de mayo de 2001, instruyendo a Mercado Aponte para que anotara la fecha de expedición de la resolución como el 3 de julio de 2001, que era la próxima fecha en el calendario de vistas del Tribunal Municipal de Cidra en que se atenderían los recursos de revisión de las faltas administrativas de tránsito. Posteriormente, Colón Mendoza certificó la notificación como hecha el 3 de julio de 2001. No obstante lo anterior,

no se estampó el sello del tribunal a la Resolución.(³) Así las cosas, Colón Mendoza —a solicitud de Busó Aboy— procedió a entregarle a ésta copia de los documentos, a saber: del boleto, del recurso de revisión y de la Resolución.

Posteriormente, al tratar de entrar el caso en el sistema computarizado de apoyo a los tribunales, donde se recopila la información de los casos, Colón Mendoza no pudo acceder con el número de clave de Busó Aboy debido a que sólo podía tener acceso con el número de clave de la juez Nilda Cruz Aponte, quien en esos momentos se encontraba de vacaciones. Por tal razón, Colón Mendoza se comunicó con Busó Aboy y le explicó lo sucedido. La entonces juez Busó Aboy le informó que se comunicaría con la juez Cruz Aponte. Poco tiempo después, Busó Aboy llamó a Colón Mendoza y le comunicó que había hablado con la juez Cruz Aponte *y ésta le había indicado que no había problemas con entrar el caso al sistema con su número de clave.*

Siguiendo estas instrucciones, Colón Mendoza entró el recurso de revisión al sistema de apoyo computarizado el

---

(³) El cuerpo de la Resolución indica lo siguiente:

"Visto el Recurso de Revisión sometido por el peticionario de epígrafe en Caguas Puerto Rico, el Tribunal luego de la vista llevada a cabo en relación al mismo, dicta la siguiente RESOLUCIÓN basándose en las razones que más adelante se expresan:

    _X_  Comparece el Recurrente

    ___  No comparece el Recurrente, a pesar de haber sido notificado previamente del señalamiento y no presentó excusas al Tribunal.

    ___  Comparece el Policía denunciante.

    _X_  No comparece el Policía denunciante, a pesar de haber sido notificado previamente del señalamiento y no presentó excusas al Tribunal.

    _X_  Sometido por las alegaciones.

    _X_  **CON LUGAR** el Recurso de Revisión y se **ORDENA:**

        _X_  Eliminar el gravamen de la licencia

        ___  Devolución de licencia

        ___  Devolver la multa pagada

    ___  **SIN LUGAR** el Recurso de Revisión

En Cidra, Puerto Rico a *3* de julio de *2001*.

Fdo. *María J. Busó Aboy*
JUEZ MUNICIPAL"
Informe final de la Comisión, págs. 10-11.

15 de junio de 2001, utilizando la clave de acceso de la juez Cruz Aponte. Al entrar el caso, el sistema lo incluyó en el calendario de vistas y emitió las citaciones a Busó Aboy y al Departamento de Transportación y Obras Públicas para vista el 3 de julio de 2001.

Así las cosas, Colón Mendoza —preocupada por la serie de irregularidades que habían ocurrido— le informó a la juez Cruz Aponte todo lo sucedido cuando ésta llegó de sus vacaciones. La mencionada magistrada, luego de examinar el expediente y percatarse de la existencia de la resolución suscrita por la querellada, le informó el asunto al Juez Administrador de la Región Judicial de Caguas. Éste —luego de reconocer la firma de Busó Aboy en el documento de resolución— decidió referir el asunto a la Oficina de la Directora Administrativa de los Tribunales, quien, a su vez, refirió el asunto a la Oficina de Asuntos Legales de la Administración de los Tribunales.

Al concluir la investigación correspondiente, el 13 de mayo de 2003 la Oficina de Administración de los Tribunales rindió un informe —en el cual se incluía la prueba documental y las declaraciones tomadas durante dicho procedimiento— a la Comisión. En virtud de ello, la Comisión designó a la Lcda. Delia Lugo Bougal para el procedimiento de determinación de causa probable. El 2 de julio de 2003 la Lcda. Delia Lugo Bougal rindió su informe en donde determinó que, efectivamente, existía causa probable para iniciar el procedimiento disciplinario.

Así las cosas, el 2 de septiembre de 2003 se presentó una querella contra la licenciada Busó Aboy, donde se le imputaron cargos por infracciones a los Cánones I, II, V, XI, XII(a) y (b), XXIII y XXVI de Ética Judicial, 4 L.P.R.A. Ap. IV-A. Además, se le imputó haber actuado en contravención de la Ley de la Judicatura de 1994 y de la Regla 63.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III.

Ese mismo día, la licenciada Busó Aboy presentó su renuncia al cargo de Juez Municipal del Tribunal de Primera Instancia, efectiva el 15 de septiembre de 2003, para acogerse a los beneficios del retiro. Ésta fue aceptada por la entonces Gobernadora de Puerto Rico, Hon. Sila María Calderón.

No obstante la renuncia de ésta, el 15 de septiembre de 2003 este Tribunal —conforme a las disposiciones de la Regla 37 de Procedimiento para Acciones Disciplinarias y de Separación del Servicio por Razón de Salud de Jueces y Juezas del Tribunal de Primera Instancia y del Tribunal de Circuito de Apelaciones, 4 L.P.R.A. Ap. XV-A— instruyó a la Comisión a que continuara con los procedimientos disciplinarios iniciados contra la licenciada Busó Aboy, de entender y resolver que la conducta imputada, de ser probada, constituía una violación a los cánones del Código de Ética Profesional, 4 L.P.R.A. Ap. IX.

Mediante resolución a esos efectos, la Comisión le concedió un término a la Oficina de Administración de los Tribunales para que se expresara con respecto a si los hechos imputados a la licenciada Busó Aboy constituían una posible violación a los cánones del Código de Ética Profesional. De igual forma, ordenó que, de ser necesario, presentara la correspondiente querella enmendada o, si no se constituía una violación, indicara si debía desestimarse la querella.

En cumplimiento con la referida orden, y luego de concluir que la conducta de Busó Aboy infringía varios de los cánones del Código de Ética Profesional, el 14 de octubre de 2003 la Oficina de Administración de los Tribunales presentó una querella enmendada donde se le imputaron a la licenciada Busó Aboy —además de los cargos incluidos en la querella original por violaciones a los Cánones de Ética Judicial— cuatro cargos por infracciones al Art. 1 del Preámbulo del Código de Ética Profesional (Preámbulo), 4 L.P.R.A. Ap. IX, C. 1 n., y a los Cánones 9, 35 y 38 del

Código de Ética Profesional, 4 L.P.R.A. Ap. IX.([4]) La Comisión determinó causa y autorizó la presentación de la querella enmendada.

Oportunamente, la licenciada Busó Aboy presentó su contestación a la querella enmendada, en la que expresó su versión de lo acontecido. En su comparecencia negó haber violado los cánones del Código de Ética Profesional y señaló que no discutiría las supuestas violaciones a los Cánones de Ética Judicial imputados, ya que entendía que, debido a que se había acogido al retiro, éstas se habían tornado académicas. Alegó, en síntesis, que las imputaciones a las violaciones a los Cánones de Ética Profesional eran infundados, ya que ella nunca autorizó a Mercado Aponte a firmar por ella su recurso de revisión. Indicó, además, que si bien era cierto que había firmado la resolu-

---

([4]) En el *primer cargo* se le imputó a la querellada haber violado el Canon XII(a) y (b), y XXIII de Ética Judicial, 4 L.P.R.A. Ap. IV-A, al valerse de su investidura judicial para sacar provecho en una controversia en la que era parte interesada, para revisar su propio recurso, para utilizar su autoridad sobre los empleados del tribunal y para inducirlos a un comportamiento irregular y en violación de la ley.

En el *segundo cargo* se le imputó haber violado los Cánones I, II, V y XI de Ética Judicial, 4 L.P.R.A. Ap. IV-A, al faltar al deber de mantener una imagen impecable ante la sociedad y mantener la confianza de ésta en la Judicatura.

En el *tercer cargo* se le imputó haber incurrido en una violación no sólo del Canon XXVI de Ética Judicial, 4 L.P.R.A. Ap. IV-A, sino, además, a la Ley de la Judicatura de Puerto Rico de 1994 y a la Regla 63.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, por no autoinhibirse en atender un caso en el cual tenía un interés personal en su resultado.

En el *cuarto cargo* se le imputó haber violado el Art. 1 del Preámbulo del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, C. 1 n., por haber incurrido en conducta deshonesta, impropia y contraria al espíritu de los cánones de ética profesional, cuyo fin es servir como una guía mínima para que los miembros de la profesión jurídica se desempeñen con la mayor competencia, responsabilidad e integridad.

En el *quinto cargo* se le imputó haber violado el Canon 9 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, debido a que, siendo funcionaria del tribunal, abusó de sus prerrogativas, conducta que debe ser desalentada y denunciada por todo abogado. De igual forma, se le imputó haberse valido de su cargo para instruir a funcionarios del tribunal a apartarse de sus deberes y a que actuaran de manera irregular, en violación a las normas y reglamentos de la Rama Judicial, con el propósito de obtener un beneficio personal.

En el *sexto cargo* se le imputó haber infringido el Canon 35 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, al faltar a su deber de sinceridad y honradez hacia los tribunales, ya que revisó su propio boleto de tránsito.

En el *séptimo y último cargo*, se le imputó haber incurrido en conducta contraria y en violación del Canon 38 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, que va en detrimento del honor y la dignidad de la profesión legal.

ción donde se resolvía el referido recurso, esto había sido por error involuntario y creyendo que era el recurso de revisión que ella estaba presentando para revisar el boleto que se le había expedido. Arguyó que lo anterior quedó demostrado por el hecho de que aunque existía la referida resolución se continuó con los procedimientos para poder conseguir al agente que expidió el boleto y se señaló el caso para vista a ser resuelto por la juez Cruz Aponte.

Luego de varios trámites e incidentes procesales, y de llevarse a cabo la vista evidenciara correspondiente, el 2 de septiembre de 2004 la Comisión emitió su informe. En éste concluyó que la conducta imputada a la licenciada Busó Aboy constituía una violación a los Cánones I, II, V, XI, XII(a) y (b), XXIII y XXVI de Ética Judicial, *ante*. De igual forma, *determinó que constituía una violación al Canon 38 del Código de Ética Profesional, ante.* En virtud de lo anterior, *recomendó que se separara a Busó Aboy de la práctica de la abogacía.*

Posteriormente, y luego de que la querellada solicitara la reconsideración del informe, el 2 de diciembre de 2004 la Comisión emitió su informe final del caso, *en el cual cambió su recomendación a que sólo se separara a Busó Aboy por un año de la práctica de la abogacía.* La licenciada Busó Aboy *no* impugnó el informe final de la Comisión. *Resolvemos.*

## II

De entrada vale la pena señalar que *no* albergamos duda alguna de que los hechos determinados por la Comisión reflejan que la conducta de la querellada, mientras se desempeñó como Jueza Municipal, constituyó una violación a los Cánones I, II, V, XI, XII(a) y (b), XXIII y XXVI de Ética Judicial, *ante*. Sin embargo, el 2 de septiembre de 2003 la licenciada Busó Aboy presentó la renuncia a su cargo. A la luz de lo anterior, nos limitaremos a pasar

juicio sobre las actuaciones de la licenciada Busó Aboy a la luz de las disposiciones de los cánones del Código de Ética Profesional. Ello en virtud de que, según la Regla 37 de Procedimiento para Acciones Disciplinarias y de Separación del Servicio por Razón de Salud de Jueces y Juezas del Tribunal de Primera Instancia y del Tribunal de Circuito de Apelaciones, ante, "el hecho de que un miembro de la Judicatura cese en sus funciones, ya sea por renuncia o por haber vencido el término de su designación, no impide que continúe un procedimiento disciplinario en su contra siempre que la conducta imputada dé lugar a su desaforo o suspensión del ejercicio de la abogacía". *In re Suárez Marchán*, 159 D.P.R. 724, 734 (2003). Véanse, además: *In re Scherrer Caillet-Bois*, 162 D.P.R. 842 (2004); *In re Campoamor Redín*, 150 D.P.R. 138, 147–148 (2000); *In re Lugo Rodríguez*, 149 D.P.R. 551, 555 (1999).

## III

█     Como es sabido, "[e]l día en que un abogado presta juramento ante el Tribunal Supremo le es concedido un gran privilegio: el de poder ejercer una profesión, honrosa por demás, que tiene una rica y extraordinaria tradición y que desempeña un importante papel en nuestra sociedad". *In re Quintero Alfaro*, 161 D.P.R. Ap. (2004), Caso Núm. TS-3034, *Per Curiam* de 9 de febrero de 2004, pág. 2. "Al juramentar una persona como abogado, éste se convierte en funcionario del Tribunal y ministro ordenado de la justicia y se compromete a desempeñar su alto ministerio con la mayor y más excelsa competencia, compromiso e integridad." Íd. Véase *Ramos Acevedo v. Tribunal Superior*, 133 D.P.R. 599, 613–614 (1993).

No obstante, y como hemos señalado, este privilegio no está exento de responsabilidades; entre ellas está la de desempeñar con lealtad los deberes que como abogados del

Estado Libre Asociado de Puerto Rico les imponen la ley y el Código de Ética Profesional. Íd.

■ Específicamente, el Preámbulo consigna el ideal del buen abogado y "la importancia de la fe en la justicia como factor determinante de convivencia social". *In re Soto Colón*, 155 D.P.R. 623, 649 (2001). Véase *In re Sepúlveda, Casiano*, 155 D.P.R. 193 (2001). A tales efectos, y en lo aquí pertinente, el referido precepto establece que será deber de todo abogado "instituir y mantener un orden jurídico íntegro y eficaz, que goce de la completa confianza y apoyo de la ciudadanía". *In re Sepúlveda, Casiano*, ante, pág. 204. Es decir, "[r]ecae en la profesión jurídica la misión de preservar la fe del Pueblo en la justicia, uno de los pilares básicos para la consecución de la convivencia social dentro de una democracia". Íd.

■ Por otra parte, el Canon 9 del Código de Ética Profesional, ante, le impone a los miembros de la clase togada la obligación de observar para con los tribunales una conducta que se caracterice por el mayor respeto.[5] *In re González Carrasquillo*, 164 D.P.R. 813 (2005); *In re Soto Colón*, ante; *In re Rivera García*, 147 D.P.R. 746, 748-749 (1999); *In re Rodríguez Ortiz*, 135 D.P.R. 683, 686 (1994). Como hemos señalado, este precepto requiere "que los abogados, cuando hayan de dirigirse al tribunal —aún para criticarle— lo hagan con respeto y deferencia". *In re Crespo Enríquez*, 147 D.P.R. 656, 662–663 (1999).

■ Por su parte, el Canon 35 del Código de Ética Profesional, ante, impone a los abogados "un deber de sinceri-

---

[5] El Canon 9, ante, establece, en lo aquí pertinente, que:

"El abogado debe observar para con los tribunales una conducta que se caracterice por el mayor respeto ....

"El deber de respeto propio para con los tribunales incluye también la obligación de tomar las medidas que procedan en ley contra funcionarios judiciales que abusan de sus prerrogativas o desempeñan impropiamente sus funciones y que no observen una actitud cortés y respetuosa."

dad y honradez ante los tribunales, frente a sus representados y al relacionarse con sus compañeros de profesión". *In re Martínez, Odell I*, 148 D.P.R. 49, 53 (1999). Véase, además, *In re Soto Colón*, ante.

▪ A tales efectos, el referido canon establece, en lo aquí pertinente, que "no es sincero ni honrado el utilizar medios que sean inconsistentes [sic] con la verdad ni se debe inducir al juzgador a error utilizando artificios o una falsa relación de los hechos o del derecho". (Énfasis suprimido.) *In re Silvagnoli Collazo*, 154 D.P.R. 533, 540 (2001). Véase, además, *In re Aguila López*, 152 D.P.R. 49, 52–53 (2000).

▪ Con respecto a las obligaciones consagradas en este canon, hemos expresado, en innumerables ocasiones, que éstas constituyen "normas mínimas de conducta que sólo pretenden preservar el honor y la dignidad de la profesión". *In re Ortiz Martínez*, 161 D.P.R. 572, 587 (2004). Véanse: *In re Collazo Sánchez*, 159 D.P.R. 769 (2003); *In re Montañez Miranda*, 157 D.P.R. 275 (2002); *In re Soto Colón*, ante; *In re Criado Vázquez*, 155 D.P.R. 436 (2001). Por tal razón, el abogado no sólo debe observarlas durante un pleito, sino en toda faceta en la cual se desenvuelva. *In re Collazo Sánchez*, ante; *In re Soto Colón*, ante; *In re Criado Vázquez*, ante; *In re Belk, Serapión*, 148 D.P.R. 685, 691 (1999).

▪ A esos efectos, hemos expresado que "[e]l compromiso de un abogado con la verdad debe ser siempre incondicional". *In re Montañez Miranda*, ante, pág. 284. Véase *In re Guzmán Esquilín*, 146 D.P.R. 853 (1998). Ello debido a que "[m]ás que un ideal irrealizable, la verdad es atributo inseparable del ser abogado y, sin ella, la profesión jurídica no podría justificar su existencia". *In re Montañez Miranda*, ante, pág. 281. Véanse: *In re Sepúlveda Girón*, 155 D.P.R. 345 (2001); *In re Martínez, Odell II*, 148 D.P.R. 636, 641 (1999).

▆ Conforme a lo anterior, hemos señalado que "[e]l abogado no puede proveer al tribunal información falsa o que no se ajuste a la verdad, ni puede tampoco ocultarle información certera que deba ser revelada". *In re Astacio Caraballo*, 149 D.P.R. 790, 799 (1999). Véase, también, *In re Filardi Guzmán*, 144 D.P.R. 710 (1998). De igual forma, tampoco "puede un abogado acudir al sistema de administración de justicia si, al así hacerlo, y con el fin de adelantar sus propios intereses, falta a la verdad". *In re Astacio Caraballo*, ante, pág. 799.

▆ En virtud de lo anterior, este Tribunal ha expresado reiteradamente que se infringe el deber impuesto por el Canon 35, ante, "con el simple hecho objetivo de faltar a la verdad, lo cual supone una conducta lesiva a las instituciones de justicia, independientemente de los motivos para la falsedad".[6] (Énfasis suprimido.) *In re Astacio Caraballo*, ante, pág. 799. Véase, además, *In re Belk, Serapión*, ante. Es decir, "[p]ara incurrir en esta falta, no es necesario que se haya faltado a la verdad deliberadamente o de mala fe, con la intención de defraudar o engañar o que se haya producido un perjuicio a terceros". *In re Astacio Caraballo*, ante, pág. 799. Véanse, además: *In re Ortiz Martínez*, ante; *In re Montañez Miranda*, ante; *In re Sepúlveda Girón*, ante; *In re Martínez, Odell I*, ante; *In re Chaar Cacho*, 123 D.P.R. 655 (1989); *In re Rivera Arvelo y Ortiz Velázquez*, 132 D.P.R. 840 (1993).

▆ De otra parte, el Canon 38 del Código de Ética Profesional, ante, extiende la obligación de los abogados de conducirse en forma digna y honrada a su vida privada.[7]

---

[6] Hemos señalado, además, que "[s]e infringe este deber deontológico con el hecho objetivo de faltar a la verdad en funciones propias de un abogado o cuando, actuando como ciudadano común, se pretende realizar actos o negocios de trascendencia jurídica". *In re Martínez, Odell II*, 148 D.P.R. 636, 642 (1999). Véanse, además: *In re Ortiz Martínez*, 161 D.P.R. 572 (2004); *In re Montañez Miranda*, 157 D.P.R. 275 (2002); *In re Sepúlveda Girón*, 155 D.P.R. 345 (2001).

[7] El Canon 38 (4 L.P.R.A. Ap. IX) establece, en lo aquí pertinente, que:

*In re Quiñones Ayala*, 165 D.P.R. 138 (2005); *In re Soto Colón*, ante; *In re Silvagnoli Collazo*, ante.

■ Todo ello debido a que "[l]a apariencia de conducta impropia puede resultar muy perniciosa con respeto de la ciudadanía por sus instituciones de justicia y a la confianza que los clientes depositan en sus abogados". *In re Ortiz Martínez*, ante, pág. 588. Véase, además, *In re Sepúlveda Girón*, ante.

■ A tales efectos, hemos señalado que "por ser los abogados el espejo donde se refleja la imagen de la profesión, éstos deben actuar con el más escrupuloso sentido de responsabilidad que impone la función social que ejercen". *In re Quiñones Ayala*, ante, pág. 131. Véanse, además: *In re Silvagnoli Collazo*, ante; *In re Ortiz Brunet*, 152 D.P.R. 542 (2000); *In re Coll Pujols*, 102 D.P.R. 313, 319 (1974). Por tal razón, "el abogado habrá de desempeñarse con dignidad y alto sentido del honor, aunque eso implique ciertos sacrificios personales". *In re Quiñones Ayala*, ante, pág. 131. Véanse, además: *In re Silvagnoli Collazo*, ante; *In re Colón Ramery*, 133 D.P.R. 555, 562 (1993).

## IV

■ En ocasiones anteriores expresamos que este Tribunal no habrá de alterar las determinaciones de hechos de la Comisión, salvo en aquellos casos en los que se demuestre parcialidad, prejuicio o error manifiesto. *In re Scherrer Caillet-Bois*, ante; *In re Suárez Marchán*, ante; *In*

---

"El abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia. En su conducta como funcionario del tribunal, deberá interesarse en hacer su propia y cabal aportación hacia la consecución de una mejor administración de la justicia. Tal participación conlleva necesariamente asumir posiciones que puedan resultarle personalmente desagradables pero que redundan en beneficio de la profesión....

"Por razón de la confianza en él depositada como miembro de la ilustre profesión legal, todo abogado, tanto en su vida privada como en el desempeño de su profesión, debe conducirse en forma digna y honorable."

*re Moreira Avillán*, 147 D.P.R. 78, 86 (1998). En este caso, tras un examen sereno y minucioso del informe rendido por la referida Comisión y de la prueba que obra en el expediente, *no encontramos razón por la cual debamos intervenir con las determinaciones fácticas de dicho cuerpo.*

Un examen de los hechos del presente caso denotan deformación moral de parte de la querellada Busó Aboy. La serie de irregularidades en las que incurrió Busó Aboy, analizadas en conjunto, aunque no constituyen una violación al Canon 9, ante —por estar este precepto dirigido a regir la conducta del abogado litigante en corte— constituyen sin lugar a dudas violaciones tanto al Canon 35 como al Canon 38 del Código de Ética Profesional, ante, al ésta no haber ejercido su profesión con sinceridad y honradez, al no haberse conducido de manera digna y honorable, y al haber faltado a la verdad.

Tal y como señaláramos, en el presente caso Busó Aboy no sólo presentó su recurso de revisión en el tribunal de Cidra, aun cuando tenía conocimiento que dicho foro no tenía competencia para atenderlo, sino que presentó su recurso en un tribunal en el cual ella ejercía labores como Juez Municipal. Si a esto le añadimos que la querellada *instruyó* a un empleado a que cumplimentara su recurso y lo firmara para que no apareciera su letra en el documento; que instó a la secretaria del tribunal a presentar y entrar en el Libro de Radicaciones el recurso de revisión —aun cuando ésta tuvo dudas con respecto a la corrección de tal acción— que cumplimentó y firmó su propia resolución eximiéndose de responsabilidad, postdatándola el 3 de julio de 2001, y que le indicó a la secretaria que no había problema con que entrara el caso con el número de clave de acceso de la juez en propiedad, llegamos a la inevitable conclusión de que Busó Aboy no desempeñó su profesión con la mayor y más excelsa competencia, compromiso e integridad.

Ciertamente, el comportamiento observado por Busó Aboy *no* estuvo a la altura de la honrosa profesión que ostenta y mucho menos actuó como ministro y buen funcionario del tribunal. No hay duda que sus actuaciones violaron de manera inaceptable el deber de todo abogado, como funcionario del tribunal, de colaborar en la compartida e indivisible encomienda de lograr la verdad y administrar cumplida la justicia.

En el presente caso, la querellada no sólo faltó a la verdad, sino que lo hizo con el expreso propósito de engañar al tribunal. Como hemos señalado antes,

> "Una información falsa presentada por abogados al tribunal constituye conducta profesional reprobable .... *La mentira degrada el carácter y envilece el espíritu y es antítesis de la conducta recta y honorable que el Código de Ética Profesional exige de todo abogado.* Jugar al esconder con la justicia, que es jugar al esconder con la verdad, es práctica deleznable...." (Énfasis suplido.) *In re Filardi Guzmán*, ante, pág. 718, citando a *In re Ramos y Ferrer*, 115 D.P.R. 409, 412 (1984).

Peor aún, la querellada llevó a cabo tal conducta sólo para obtener un beneficio personal, esto obviando que reiteradamente hemos expresado que el abogado " 'deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales[,] y debe evitar hasta la apariencia de conducta profesional impropia' ". *In re Vélez Lugo*, 164 D.P.R. 751, 755 (2005). Véase *In re Scherrer Caillet-Bois*, ante.

Tal conducta, lejos de representar respeto y exaltación judicial, constituyó una violación a los cánones del Código de Ética Profesional *y merece nuestro más fuerte repudio.* Sin duda Busó Aboy se olvidó que tenía la obligación de mantener y promover inmaculada la imagen de la justicia.

Las actuaciones de Busó Aboy no sólo laceran el honor y la dignidad de la profesión, sino que violentan claramente los preceptos básicos que rigen a todos los miembros de la

clase togada, los cuales imponen la obligación de actuar con el más alto sentido de compromiso y respeto hacia la profesión.

Resulta evidente que las condiciones morales de Busó Aboy *no* son las adecuadas para poder llevar a cabo tan ilustre profesión. Más aún, resulta inevitable llegar a la conclusión de que la querellada *no* tiene la entereza y cualidades morales, necesarias e indispensables, para poder continuar practicando la honrosa profesión de abogado en nuestra jurisdicción.

Los hechos particulares de este caso constituirían, como mínimo, causa suficiente para destituir a un juez de su puesto. *Habiendo Busó Aboy renunciado a su cargo, procede que actuemos contra ésta en su calidad de abogada. Por los fundamentos antes expresados y por la naturaleza y gravedad de la conducta incurrida por María J. Busó Aboy, se decreta la suspensión inmediata e indefinida de ésta del ejercicio de la abogacía en nuestra jurisdicción.*

*Se dictará sentencia de conformidad.*

El Juez Presidente Señor Hernández Denton se inhibió. El Juez Asociado Señor Fuster Berlingeri no intervino.