per curiam:
A principios de la década de 1990, el Ledo. Manuel A. Santiago Tirado(1) promovió ante el entonces Tribunal Superior, Sala de Bayamón, la declaratoria de he-rederos de su madre, doña Juana Tirado.(2) El 11 de fe-brero de 1991, el Tribunal de Primera Instancia emitió una resolución, en la que decretó como único y universal here-dero de doña Juana Tirado a su hijo, el licenciado Santiago *788 Tirado, y al viudo, don Aniceto Tirado, en la cuota viudal usufructuaria correspondiente.
Posteriormente, y con el propósito de tramitar la decla-ratoria de herederos de don Aniceto Tirado,(3) el licenciado Santiago Tirado compareció a la oficina del Ledo. Sixto Pa-bón García el 16 de abril de 1992 y suscribió bajo jura-mento una petición que, en lo concerniente, dispone:
1. Que el peticionario es hijo de Juanita Tirado quien fuera la legítima esposa de Aniceto Tirado fallecido el día 31 de mayo de 1978 en la ciudad de Ponce, Puerto Rico, .quien dejó bienes ubicados en esta jurisdicción.
2. Que aunque la madre del aquí peticionario era la legí-tima esposa del causante, no procrearon hijos ni a dicho cau-sante se le conoce descendientes o ascendientes ni herederos en el grado [colateral] hasta el sexto grado de consanguinidad.
3. Que en vista de lo anterior se suplica del Honorable Tribunal decrete que el causante no dejó herederos conforme a la ley y que la participación de él en algún bien que le halla pertenecido sea consignada en el Tribunal y que de no haber reclamación dentro del término de ley dicha participación sea asignada a la Universidad de Puerto Rico como está estatuido en la ley. Exhibit 3.
En el juramento de esta petición declaró que lo allí ex-puesto era cierto por constarle, al aquí querellado, de pro-pio y personal conocimiento.(4) Prontamente, la petición ju-ramentada se presentó ante el Tribunal de Primera Instancia, Sala de Patillas, quien dictó una Resolución el 28 de abril de 1992. En su dictamen, el tribunal de instan-cia estableció que a don Aniceto no se le conocían herederos según la ley; sin embargo, nada se dispuso sobre el destino de sus bienes.
El 7 de noviembre de 1992 se otorgó ante el licenciado Pabón García una escritura pública sobre la segregación y *789 compraventa de un inmueble sito en el barrio Jacaoba de Patillas, Puerto Rico. Doña Juana y don Aniceto eran co-dueños del inmueble en una séptima parte. En la escritura figuraron como compradores el Sr. Francisco Cintrón Rivera y su esposa, la Sra. Fulgencia Rodríguez Ortiz.(5) El licenciado Santiago Tirado compareció al otorgamiento de la escritura como heredero de Juana Tirado. No compare-ció heredero alguno de Aniceto Tirado; pero, por error, el notario hizo constar en la escritura que el licenciado Santiago Tirado adquirió por herencia de su madre una sép-tima parte del inmueble.(6)
El capital para la compra del inmueble se iba a obtener mediante financiamiento, garantizado con una hipoteca voluntaria a favor de Farmers Home Administration. Como la escritura de la hipoteca no pudo otorgarse en la misma fecha que la de compraventa, al final de esta última se aclaró que los vendedores recibirían el pago correspon-diente en los próximos cuarenta y cinco días.
El 10 de diciembre de 1992, los compradores otorgaron la escritura de hipoteca voluntaria a favor de Farmers Home Administration. Cuatro días más tarde, el notario autorizante, licenciado Pabón García, hizo entrega al licen-ciado Santiago Tirado de un cheque por la suma de $5,600, por la participación que pertenecía a éste en el inmueble. En el talonario de este instrumento se indicaba que el total era $6,000 y que se le dedujeron $400 en concepto de un solar que se le había adjudicado al licenciado Santiago Ti-rado al otorgarse la escritura de compraventa. En la suma de dinero que se le entregó al abogado Santiago Tirado, por error, el notario incluyó la parte que correspondía a la su- *790 cesión de Aniceto Tirado, a la cual el querellado no tenia derecho alguno.(7)
Al presentarse la escritura de compraventa al Registro de la Propiedad, el Registrador denegó su inscripción por-que se hacía necesaria la participación del Estado Libre Asociado como heredero de Aniceto Tirado, por razón de que éste falleció sin dejar descendiente, ascendiente ni pa-rientes colaterales hasta el sexto grado de consanguinidad. En ánimo de corregir la deficiencia, el licenciado Pabón García intentó enmendar la declaratoria de herederos de Aniceto Tirado. La petición de la enmienda fue declarada “sin lugar”, al resolver el tribunal que correspondía al Es-tado Libre Asociado promoverla.
El 15 de mayo de 1996, el licenciado Pabón García le escribió al Sr. Miguel Lefebre, de Farmers Home Administration, para informarle sobre la situación que había impe-dido inscribir la escritura de hipoteca. En la comunicación se hizo constar que se le entregó al licenciado Santiago Tirado su participación, más los $3,000 que le correspon-dían a los causahabientes de don Aniceto. Copia de esta carta fue enviada al licenciado Santiago Tirado mediante correo certificado.
El 14 de agosto de 1996, el licenciado Pabón García es-cribió otra carta, esta vez dirigida al querellado, en la cual le recordó que se le habían entregado tres mil dólares que correspondían a la Sucesión de Aniceto Tirado. Mediante la esta carta, a su vez, el notario le exigió al licenciado Santiago Tirado la devolución del dinero y le indicó que, como resultado de una investigación, se enteró que don Aniceto era uno de siete hermanos de los cuales aún vivían tres, dos habían dejado descendientes y otro falleció sin procrear hijos. Además de los requerimientos por escrito, en una o *791 dos ocasiones ambos abogados dialogaron por teléfono so-bre el asunto.(8) El licenciado Santiago Tirado insistió que, en relación con el dinero que equivocadamente él había recibido, se le tenía que reconocer un crédito por los gastos en que había incurrido para el funeral de su padrastro, don Aniceto Tirado.
Luego de varios trámites judiciales y notariales, el licen-ciado Pabón García finalmente logró que tanto la escritura de compraventa como la de hipoteca tuvieran acceso al Re-gistro de la Propiedad. Como parte de tales gestiones, el licenciado Pabón García consignó en el tribunal de instan-cia, de su propio caudal, la suma de tres mil dólares que le correspondían a la sucesión de Aniceto Tirado, dinero que el querellado se negaba devolver.
El caso se inició mediante una queja presentada cuando el querellado fungía como Juez del Tribunal de Primera Instancia. Por ende, el asunto fue inicialmente investigado por la Oficina de Administración de los Tribunales. Dicha Oficina rindió un informe, dirigido a este Tribunal, en el cual recomendó considerar la destitución de Santiago Ti-rado como juez. En ese momento, trasladamos la queja a la Comisión de Disciplina y de Separación del Servicio por Razón de Salud de Jueces o Juezas del Tribunal de Pri-mera Instancia y del Tribunal de Apelaciones.
Mientras el caso se encontraba ante la consideración de la Comisión de Disciplina Judicial, la entonces Goberna-dora de Puerto Rico, Hon. Sila María Calderón, aceptó la renuncia como juez del licenciado Santiago Tirado, quien se acogió a los beneficios del retiro. Oportunamente, el hoy querellado solicitó la desestimación de la querella, adu-ciendo falta de jurisdicción de la Comisión de Disciplina Judicial. En atención a tal petición, este Tribunal ordenó el archivo de la querella. El fundamento de la determinación *792 fue que la Comisión de Disciplina Judicial no tenía juris-dicción para dilucidar la querella una vez Santiago Tirado se retiró de la Judicatura.
No obstante, este Tribunal refirió el asunto al Procura-dor General para que presentara las querellas correspon-dientes por violación a los cánones del Código de Etica Pro-fesional, a la luz de los hallazgos realizados por la Oficina de Administración de los Tribunales en la investigación de la queja de epígrafe. En cumplimiento con el mandato re-cibido, el Procurador General presentó una querella en la que imputó al licenciado Santiago Tirado haber violado el Canon .35 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, por juramentar la declaratoria de herederos de Aniceto Tirado negando que éste tuviese herederos a pesar de co-nocer de la existencia de parientes colaterales vivos. Ade-más, el Procurador General imputó al abogado querellado no haberse esforzado en exaltar el honor y la dignidad de la profesión y conducirse de forma aparentemente impro-pia, vulnerando de este modo el Canon 38 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX. Oportunamente, el querellado presentó una contestación a la querella instada. En su contestación indicó que nunca conoció ni tuvo con-tacto con pariente alguno de don Aniceto, razón por la cual no mintió en la declaratoria de herederos.
Así las cosas, nombramos Comisionado Especial al Ledo. Enrique Rivera Santana para que escuchara la prueba, formulara determinaciones de hechos y sometiera las recomendaciones que entendiera procedentes. Luego de varios incidentes procesales, se celebró la vista en su fondo del caso de epígrafe.(9)
El 6 de noviembre de 2006, el Comisionado Especial so-metió su informé a este Tribunal. En éste, luego de relatar *793 los hechos reseñados, concluyó que el licenciado Santiago Tirado debería ser exonerado del cargo que se le imputó respecto a la violación del Canon 35 del Código de Ética Profesional, supra. Sin embárgo, recomendó sancionar al querellado por infringir el Canon 38, supra, al no restituir el dinero que se le entregó en exceso y al que no tenía derecho. Con el beneficio del informe del Comisionado, resolvemos.
I
El Canon 35 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, exige que la conducta de los miembros de la profesión legal ante los tribunales hacia sus representados y en las relaciones con sus compañeros sea sincera y honrada. Añade el precepto que no es siñcero ni honrado utilizar medios incompatibles con la verdad, ni se debe inducir a error al juzgador mediante artificios o una falsa relación de los hechos o del Derecho. Estos deberes se exigen en aras de preservar el honor y la dignidad de la profesión, ya que el compromiso del abogado con la verdad es siempre incondicional. In re Fernández de Ruiz, 167 D.P.R. 661 (2006). La verdad es un atributo inseparable de ser abogado y, sin ésta, la profesión jurídica no podría justificar su existencia. In re Buso Aboy, 166 D.P.R. 49 (2005).
Al respecto, reiteradamente hemos expresado que el Canon 35, supra, exige que la conducta de todo miembro de la profesión ante los tribunales sea sincera y honrada. In re López González, 171 D.P.R. 567 (2007). Esto en virtud de que todo el entramado de nuestro sistema judicial se erige sobre la premisa de que los abogados, sobre quienes recae principalmente la misión de administrar la justicia, .han de conducirse siempre con integridad ante los foros judiciales. In re Montañez Miranda,, 157 D.P.R. 275 (2002). En fin, un abogado que falta a la verdad infringe el citado *794 Canon 35, independientemente de los motivos que lo mo-vieron a incurrir en esa conducta o de que no se hubiera perjudicado a tercero alguno. In re Grau Acosta, 172 D.P.R. 159 (2007).
Por otro lado, el Canon 38 del Código de Ética Profesional, supra, exige a todos los abogados la preservación del honor y la dignidad de la profesión, aunque ello conlleve sacrificios personales. Además, proscribe que éstos incurran en cualquier conducta de apariencia impropia. Es oportuno señalar que este canon opera ex propio vigore-, es decir, la apariencia de conducta impropia constituye una base independiente de la evaluación de la responsabilidad profesional. Véanse: In re Pérez Rodríguez, 172 D.P.R. 665 (2007); In re Gordon Menéndez I, 171 D.P.R. 210 (2007).
Infringir el citado Canon 38 resulta nocivo al respeto que la ciudadanía deposita en las instituciones de la justicia y la confianza de los clientes hacia sus abogados. In re Sepúlveda Girón, 155 D.P.R. 345 (2001); In re Pérez Rodríguez, supra. Por razón de la confianza depositada en los miembros de la ilustre profesión, todo abogado, tanto en su vida privada como en el desempeño de su profesión, debe esforzarse al máximo de su capacidad para cumplir con los principios éticos. In re Barreto Ríos, 157 D.P.R. 352 (2002). No existe dicotomía alguna entre la vida cotidiana del abogado y el ejercicio de la profesión. In re Sepúlveda Girón, ante.
Ahora bien, no nos incumbe cualquier tipo de conducta privada del abogado, sino aquella que lo haga indigno de pertenecer al foro o que afecte sus cualidades morales. In re López González, supra. En ese sentido, hemos resuelto que mediante un procedimiento disciplinario, más allá de sancionar al abogado por la falta cometida, procuramos proteger a la comunidad y a la profesión mediante una investigación de las condiciones morales del querellado, para determinar si éste puede y debe continuar ejerciendo *795 la honrosa profesión a la cual fue admitido por este Tribunal. In re Vélez Lugo, 162 D.P.R. 735 (2004).
Por último, es norma conocida que le corresponde al Comisionado Especial recibir la prueba y dirimir la evidencia conflictiva. In re Morales Soto, 134 D.P.R. 1012 (1994); In re Gordon Menéndez I, supra. El Comisionado Especial, de ordinario, está en la mejor posición para aquilatar la prueba testifical y sus determinaciones fácticas merecen nuestra mayor deferencia. In re Soto López, 135 D.P.R. 642 (1994); In re Pagán Pagán, 171 D.P.R. 975 (2007). Aun cuando este Tribunal no está obligado a aceptar el informe de un Comisionado Especial nombrado para atender una querella contra un abogado, de manera que tiene la facultad para adoptar, modificar o rechazar sus recomendaciones, de ordinario sostenemos las conclusiones de hecho de un Comisionado Especial, salvo que se demuestre prejuicio, parcialidad o error manifiesto. In re Morell, Alcover, 158 D.P.R. 791 (2003).
II
A. El Procurador General cree que la conducta desple-gada por el licenciado Santiago Tirado constituye una vio-lación al Canon 35 del Código de Ética Profesional, supra. Fundamenta su determinación en que el querellado jura-mentó la petición de declaratoria de herederos de don Ani-ceto Tirado negando que éste tuviera herederos cuando, en efecto, tenía conocimiento de la existencia de parientes co-laterales vivos. Explica, además, que dicha declaración falsa pudo haber tenido consecuencias adversas e injustas, en la medida que afecta los derechos sucesorios de esos herederos. Finalmente, afirma que la conducta observada por el querellado desató una serie de complicaciones en el caso.
*796 Por su parte, el licenciado Santiago Tirado informó que, cuando él apenas tenía cinco o seis años de edad, su madre contrajo nupcias con don Aniceto. Añadió que para ese en-tonces residían en el barrio Jacaoba de Patillas. A pesar de esto, don Aniceto trabajaba en fincas agrícolas en Estados Unidos de América y se pasaba la mayor parte del año fuera de Puerto Rico. Venía a la Isla por cortos lapsos de tiempo y regresaba a su trabajo en el continente. Afirma el querellado que cuando tenía aproximadamente nueve años de edad se trasladó a vivir, junto a su madre y padrastro, al estado de Florida. En dicho lugar residió hasta que cum-plió diecisiete años, cuando regresó a Puerto Rico a vivir con una pariente en el área de Puerto Nuevo. Finalmente, asevera que nunca conoció ni vivió con familiar alguno de su padrastro. Por lo tanto, sostiene que no mintió en la petición jurada de la declaratoria de herederos en la cual afirmó que a don Aniceto no se le conocía ascendiente, des-cendiente o colaterales hasta el sexto grado de consang-uinidad. Enfatiza que nunca afirmó que el causante no tu-viera herederos.
El Comisionado le dio entera credibilidad al testimonio del querellado sobre este respecto. Además, expuso que el testigo del Procurador General, licenciado Pabón García, declaró que sólo infirió, al aparecer los colaterales, que el licenciado Santiago Tirado “debía de saberlo”. En conse-cuencia, el Comisionado concluyó que no hubo prueba clara, robusta y convincente para establecer una violación al Canon 35, supra.
Por ser del criterio que el Comisionado, en este aspecto, no incurrió en prejuicio, parcialidad o error manifiesto, sostenemos como correctas las determinaciones de hechos del Comisionado. No se infringió el citado Canon 35 en este caso.
B. Distinta es la situación en cuanto al Canon 38 del Código de Ética Profesional, supra. Se le imputa al quere-llado haber retenido una suma de dinero que no le corres- *797 pondía, a pesar de las innumerables comunicaciones y re-querimientos que le hiciera el licenciado Pabón García al respecto. No podemos perder de vista que la conducta dél querellado contribuyó a que los compradores de la propie-dad en controversia sufrieran pérdidas y daños que consis-tieron en retrasos en el pago de la hipoteca y los apercibi-mientos de ejecución. Por tales razones, el Procurador General entiende que el licenciado Santiago Tirado incu-rrió en conducta de apariencia impropia, al mismo tiempo que falló en exaltar el honor y la dignidad de la profesión legal, conducta violatoria del citado Canon 38.
El querellado alega que no devolvió el dinero porque tenía el derecho a que se le reembolsaran los gastos fúne-bres de su padrastro. Ignora el hecho de que, siendo abo-gado, no los reclamó de la forma legalmente correcta ni de las personas que en derecho hubieran estado obligadas a reembolsarle los gastos. Como expone el Comisionado, el querellado se escudó en un error del licenciado Pabón Gar-cía, al entregarle una suma mayor de la que le pertenecía para retener, sin excusa legal válida, el dinero que se le pagó en exceso. Peor aún, el querellado recibió el dinero —el cual no le pertenecía— en 1992 y no fue hasta agosto de 2006, cuando se celebró la vista en su fondo sobre esta qúerella, que devolvió solamente la mitad de la suma en controversia.
Ciertamente, la actuación del licenciado Santiago . Ti-rado no exalta el honor y la dignidad de la profesión. Era su deber, legal y moral, devolver el dinero que le fue entre-gado erróneamente. Por consiguiente, su conducta adolece de una seria impropiedad e irresponsabilidad. Si entendía que poseía un crédito contra la sucesión por los gastos fú-nebres en que incurrió, debió haber procedido legalmente y no tomar la justicia en sus mános. Tal comportamiento me-rece que sea sancionado, aun cuando los hechos tuvieron lugar en el ámbito de su vida privada, ya que éstos afectan sus cualidades morales. In re López González, ante.
*798 Ill
Por todo lo expuesto, resolvemos que el querellado in-fringió las disposiciones del Canon 38 del Código de Etica Profesional, supra. En consecuencia, procede decretar la suspensión del Ledo. Manuel Santiago Tirado del ejercicio de la abogacía por el término de seis meses, contado dicho término a partir de la fecha en que la Sentencia advenga final y firme. Además, le ordenamos que en este término devuelva al licenciado Pabón García el dinero que recibió en exceso en concepto de su herencia y que aún hoy no ha reembolsado. Apercibimos, a su vez, al licenciado Santiago Tirado de que en el futuro se ciña estrictamente a las dis-posiciones del Código de Etica Profesional.

Se dictará sentencia de conformidad.

El Juez Asociado Señor Rivera Pérez no intervino.

 La fecha no ha podido ser precisada.

 El querellado, Ledo. Manuel A. Santiago Tirado, fue admitido al ejercicio de la profesión legal en Puerto Rico el 28 de mayo de 1976. En junio de ese mismo año fue admitido al ejercicio de la notaría. El 15 de junio de 1995 fue nombrado Juez del Tribunal de Primera Instancia, puesto al que renunció, efectivo el 31 de mayo de 2001, para acogerse a los beneficios del retiro.

 Tanto doña Juana Tirado como don Aniceto Tirado murieron intestados el 14 de diciembre de 1976 y el 31 de mayo de 1978, respectivamente.

 El juramento fue reconocido como el Affidávit 12,858 del Registro de Testi-monios del licenciado Pabón García.

 El señor Cintrón Rivera fue quien formuló la queja.

 Según los mismos hechos de este caso, se tramitó una querella contra el licenciado Pabón García que fue resuelta mediante una opinión de este Tribunal el 6 de febrero de 2002. In re Pabón García, 156 D.P.R. 168 (2002).

 La suma que le correspondía a la sucesión de Aniceto Tirado y, por ende, la cantidad entregada erróneamente al licenciado Santiago Tirado ascendía a tres mil dólares.

 Debemos indicar que todos los requerimientos hechos al licenciado Santiago Tirado para que devolviese el dinero que le fue erróneamente entregado fueron de naturaleza extrajudicial; es decir, nunca fue demandado civilmente ni se le presentó denuncia criminal alguna.

 La prueba oral consistió en los testimonios de los Ledos. Sixto Pabón García y Santiago Tirado. También se estipuló como testimonio una deposición del Ledo. Iván Vélez Quirós, quien acompañó al querellado a recoger el cheque a la oficina del licenciado Pabón García. Por último, se presentó cuantiosa prueba documental que forma parte del expediente.