EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br><br>Sonia I. Vélez Colón | 2017 TSPR 133<br><br>198 DPR ____ |

Número del Caso: AB-2012-46

Fecha: 14 de julio de 2017

Abogado de la promovida:

      Lcdo. Guillermo Figueroa Prieto

Oficina del Procurador General:

      Lcda. Margarita Mercado Echegaray
      Procuradora General

Materia: Resolución del Tribunal con voto particular de conformidad y votos particulares disidentes.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | | |
|---|---|---|
| Sonia I. Vélez Colón | AB-2012-46 | Queja |

RESOLUCIÓN

En San Juan, Puerto Rico, a 14 de julio de 2017.

> [D]ebemos recordar que el respeto hacia los tribunales y la obligación de desalentar y evitar ataques injustificados contra los jueces no sólo están entre los pilares fundamentales sobre los que se erige nuestro código deontológico, sino que también sobre ellos descansa la buena marcha de los procedimientos judiciales y la confianza que el público deposita en ellos. *In re Sánchez Ramos*, 174 DPR 453, 469 (2008).

El deber que tenemos todos los miembros de la profesión jurídica de instituir y mantener un orden jurídico, íntegro y eficaz, que goce de la completa confianza y apoyo de la ciudadanía, nos impide avalar las actuaciones llevadas a cabo por la Lcda. Sonia I. Vélez Colón. Estas, las cuales se discutirán a continuación, constituyeron una violación al Código de Ética Profesional y, sin lugar a dudas, deben ser motivo de una sanción disciplinaria. Además, toda vez que las mismas no están en

controversia, procedemos a resolver sin otro trámite ulterior. [1]

I

En diciembre de 2011, surgieron unas denuncias relacionadas a la mala utilización de personal, propiedad y fondos públicos por parte del Ex Juez Presidente de este Tribunal, Hon. Federico Hernández Denton. Tanto la Rama Legislativa como la Ejecutiva iniciaron sendas investigaciones en cuanto a dichas denuncias.

Por su parte, la licenciada Vélez Colón, excediéndose de sus poderes y facultades como Directora de la Oficina de Administración de los Tribunales (OAT), el 13 de enero de 2012, contrató al Lcdo. Cesár López Cintrón para que iniciara una investigación. Del contrato del licenciado López Cintrón surge una descripción sumamente laxa y escueta del tipo de investigación que este llevaría a cabo, a saber, "una investigación […] a la luz de los señalamientos públicos que recientemente se han formulado sobre el uso de recursos y fondos públicos en la Rama Judicial". Además, del mismo documento se desprende que este cobraría doscientos (200) dólares por cada hora trabajada.

Es sumamente importante resaltar que dicho contrato se mantuvo a espaldas de la mayoría de los miembros de esta

---

[1] Véanse *In re Sánchez Ramos*, 174 DPR 453, 460 (2008); *In re Davison Lampon*, 159 DPR 448, 455 (2003); *In re Irizarry Vega*, 151 DPR 916 (2000).

Curia. No fue hasta el 26 de enero de 2012 que dicha mayoría se enteró por El Nuevo Día, periódico que le realizó una entrevista a la licenciada Vélez Colón sobre el particular y cuya portada leía "Histórica Pesquisa al Supremo", que la licenciada Vélez Colón había contratado al licenciado López Cintrón para que realizara una investigación que incluiría aspectos de seguridad, y el uso de recursos y fondos públicos por parte de los Jueces y Juezas de este Tribunal. Ello, como secuela de las denuncias presentadas en contra del Hon. Federico Hernández Dentón.

Ante la sorpresiva e improcedente investigación, el mismo 26 de enero de 2012, seis (6) Jueces de este Tribunal emitieron una comunicación pública. Allí, expresaron su preocupación en cuanto al daño que la referida investigación podía causar a la Rama Judicial. Específicamente, señalaron, en lo pertinente, lo siguiente:

> Desde que juramos a nuestros cargos hemos insistido en que los fondos y recursos de la Rama Judicial se utilicen adecuadamente y con transparencia. Velar por el buen uso de los recursos y fondos públicos es un fin legítimo y ha sido nuestra política que al pueblo se le rinda cuenta de ello. Sin embargo, ante las serias imputaciones que confronta el Juez Presidente Federico Hernández Denton, resulta altamente sospechosa e inoportuna la contratación de un ex fiscal especial independiente para realizar una investigación a razón de $200.00 por hora hasta un máximo de $100,000 en 6 meses. Esto, en momentos en que los empleados de la Rama Judicial le exigen justicia salarial y se alega de parte de la OAT falta de recursos.

Nuestro deber ministerial es velar por la transparencia y la corrección de todos los procesos administrativos en nuestra Rama. No es apropiado realizar transacciones con fondos públicos para interferir con procesos legítimos e investigativos de otras ramas de gobierno. Esto es de suma importancia ya que es de conocimiento general que varios alguaciles y otros funcionarios han testificado en dichos procesos los cuales están en curso al presente.

Iniciar una investigación en estas circunstancias no constituye un fin público y lesiona el buen nombre de los jueces y juezas de toda la Rama Judicial.

Un día después, el 27 de enero de 2012, el Periódico El Nuevo Día, en una noticia titulada "No se cruzará de brazos", reseñó lo acontecido en una entrevista que se le realizó al Hon. Federico Hernández Denton y a la licenciada Vélez Colón en relación a la llamada "pesquisa". De la noticia se desprende que, sobre el particular, la licenciada Vélez Colón expresó lo siguiente: "cuando uno se mete a la guerra quizás no recibe un tiro, pero un raspacito viene. Así que si hay raspazo, de eso se trata, de sanar y de curar". Dichas expresiones desafiantes e intimidantes que hacían referencia a un aparente estado de guerra dentro de la Rama Judicial eran indicativas de que la licenciada Vélez Colón olvidaba, entre otros asuntos, que uno de sus deberes como Directora de la OAT era propender a la administración óptima de la justicia y de la Rama Judicial.

Dado que este Tribunal siempre ha promulgado "un sistema judicial independiente con una administración efectiva e imparcial de la justicia cimentada en la confianza de la ciudadanía",[2] no podíamos quedarnos inertes ante las circunstancias descritas. Así, el 1 de febrero de 2012, mediante Resolución, este Tribunal aprobó las Reglas para los Procedimientos de Investigaciones Especiales Independientes de la Rama Judicial. Ello, para proveer un mecanismo efectivo y transparente que rigiera todos los procedimientos investigativos realizados con fondos de la Rama Judicial y relacionados con el uso de su personal, asignación, fiscalización de fondos y de recursos judiciales. Es preciso destacar que, en la Resolución mencionada, este Tribunal expresó su completa desaprobación a las actuaciones de la licenciada Vélez Colón:

> La Constitución del Estado Libre Asociado de Puerto Rico no le reconoce a la Administración de Tribunales autoridad para realizar investigaciones disciplinarias sobre la conducta de los Jueces y Juezas del Tribunal Supremo. […].
>
> Más aun, resulta inapropiado que una funcionaria de confianza del Juez Presidente contrate servicios para realizar una investigación sobre el uso de los fondos de la Rama Judicial relacionada con los serios señalamientos contra el Juez Presidente, Hon. Federico Hernández Denton, a quien ésta responde directamente. Lejos de fomentar la transparencia de los procedimientos e impulsar la confianza del Pueblo en nuestro sistema, estas actuaciones

---

[2] Véase *In re Aprobación de las Reglas para los Procedimientos de Investigaciones Especiales Independientes de la Rama Judicial*, 184 DPR 500 (2012).

pueden constituir represalias e interferencias con testigos de las investigaciones realizadas por otras ramas de Gobierno. *In re Aprobación de las Reglas para los Procedimientos de Investigaciones Especiales Independientes de la Rama Judicial*, res. de 1 de febrero de 2012, 184 DPR 500, 501-502 (2012).

En conformidad con dicho sentir y las nuevas Reglas aprobadas, este Tribunal aprobó otra Resolución el 1 de febrero de 2012. Véase *In re Designación de Miembros de la Comisión Especial Independiente y Adopción de Medidas Relacionadas*, res. de 1 de febrero de 2012, 184 DPR 507 (2012). Mediante esta, se constituyó una Comisión Especial Independiente para investigar el uso de fondos y recursos públicos de la Rama Judicial, así como los desembolsos por parte de la OAT y su Directora. Además, se le ordenó a la licenciada Vélez Colón que, de manera inmediata, dejara sin efecto el contrato otorgado al licenciado López Cintrón y cualquier otra contratación relacionada con la investigación. Ello, tras destacar que las actuaciones de esta levantaban "serias interrogantes de índole constitucional y legal".

El 2 de febrero de 2012, el licenciado López Cintrón le cursó una comunicación a la licenciada Vélez Colón en la que le informó que, de conformidad con la Resolución antes mencionada, renunciaría al contrato otorgado y no facturaría cantidad alguna por los servicios realizados hasta dicha fecha, los cuales incluyeron el examen de las imputaciones en contra del Hon. Federico Hernández Denton y

la solicitud a este último de evidencia en cuanto a las referidas imputaciones.[3]

El 21 de febrero de 2012, seis (6) Jueces de este Tribunal emitieron un voto de conformidad en relación a las dos Resoluciones aprobadas. Entre otros asuntos, manifestaron lo siguiente:

> En Noriega v. Gobernador, 122 D.P.R. 650, 654 (1988), esbozamos que "[n]o hay nada más preciado para un 'hombre de bien' que su dignidad y reputación en la comunidad". Eso se expresó en el contexto de las llamadas "carpetas" que por décadas la Policía de Puerto Rico recopiló sobre ciudadanos por el mero hecho de sus ideologías.
>
> Creemos que esas palabras tienen gran peso en el Puerto Rico de hoy. Iniciar una investigación ilegal contra los Jueces del Tribunal Supremo por el hecho de que existan alegaciones públicas contra el Juez Presidente es un acto claro de intimidación institucional de parte de la O.A.T. que claramente lacera esta institución. Con la aprobación de las Resoluciones en controversia […] [e]vitamos el carpeteo y la persecución, y protegemos la independencia de esta Rama sin tratar de interferir con las investigaciones que ejercen las otras Ramas en el ejercicio de sus facultades constitucionales. Los fondos y los recursos de esta Rama son para el servicio del Pueblo y no para el carpeteo o la defensa personal de alguno de los integrantes de este Tribunal. *In re Aprobación de las Reglas para los Procedimientos de Investigaciones Especiales Independientes de la Rama Judicial, Designación de Miembros de la Comisión Especial Independiente y Adopción de Medidas Relacionadas*, 184 DPR 575, 580-581 (2012).

---

[3] Véase Carta del Lcdo. Cesar López Cintrón a la licenciada Vélez Colón, con fecha de 2 de febrero de 2012, disponible en: http://www.ramajudicial.pr/Prensa/comunicados/2012/Renuncia-Cesar-Lopez-Cintron-Investigacion-OAT.pdf.

Posteriormente, en septiembre de 2014, este Tribunal enmendó las Reglas de Disciplina Judicial, con el propósito de establecer un proceso que garantizara "la integridad de la Rama Judicial, salvaguardando la reputación de los jueces, las juezas y el funcionariado quienes ejercen sus funciones de forma digna, recta y con independencia de criterio". Véase *In re Enmiendas a las Reglas de Disciplina Judicial*, 191 DPR 564 (2014). En la Resolución de aprobación de la referida enmienda, este Tribunal reafirmó "la política de cero tolerancia a las acciones que laceran la confianza del Pueblo en los Tribunales y en los jueces y juezas del País". *Íd.*, pág. 565. Por otro lado, tres (3) Jueces de este Tribunal emitieron un voto particular de conformidad en cuanto a dicha Resolución, en el que destacaron que era momento de implantar una verdadera política institucional de cero tolerancia a la corrupción judicial y que para ello era necesario que los funcionarios concernidos no actuaran a la defensiva ni se escudaran en la integridad de la mayoría de los jueces y juezas. *Íd.*, pág. 583.

A su vez, la Jueza Asociada señora Pabón Charneco emitió un voto particular de conformidad, en el que le exhortó a la licenciada Vélez Colón que evaluara profundamente su desempeño y decidiera si su permanencia como brazo administrativo le hacía más daño que bien a la imagen de la Rama Judicial en Puerto Rico. *Íd.*, págs. 579-580.

El 15 de octubre de 2014, la licenciada Vélez Colón renunció a su cargo como Directora de la OAT y a su posición de carrera en el Tribunal de Apelaciones.

II

En denuncia de las actuaciones de la licenciada Vélez Colón, el 6 de febrero de 2012, la Lcda. Zaida Hernández Torres presentó una queja disciplinaria ante nos. En la misma, argumentó que el hecho de haber contratado al licenciado López Cintrón para que investigara a los Jueces y Juezas de este Tribunal -sobre los que no había alegación o sospecha alguna de aprovechamiento de bienes o servicios públicos-, constituyó un ataque injustificado en violación al Canon 9 del Código de Ética Profesional, 4 LPRA Ap. IX (en adelante, Canon 9). Además, adujo que la investigación tenía el propósito de interferir con las otras investigaciones que se estaban llevando a cabo, de distraer la atención sobre la figura central objeto del escrutinio y proyectar ante la opinión pública que se trataba de una investigación de carácter abarcador de todos los miembros del Tribunal Supremo.

El 18 de abril de 2012, la licenciada Vélez Colón presentó una moción para solicitar el archivo de la queja. Allí, sostuvo que no era su intención que se produjera una investigación de los Jueces y Juezas de este Tribunal, pues sabía que no tenía facultad para hacerla; que el ámbito de la investigación fue definido en el contrato; que la queja debía archivarse, pues el Canon 9 del Código no era de

aplicación a los jueces que estuviesen desempeñando una función judicial; y que, aun cuando se entendiera que las actuaciones de la licenciada Vélez Colón se llevaron a cabo dentro de sus funciones como abogada, tampoco sería de aplicación el Canon 9, pues, según la jurisprudencia de este Tribunal, dicho precepto estaba dirigido solamente a regular la conducta del abogado litigante en corte.

A más de cuatro (4) años de la presentación de la queja, el 8 de julio de 2016, la Secretaria Interina de este Tribunal le remitió el expediente de la queja a la Procuradora General para la correspondiente investigación e informe, a tenor con la Regla 14(d) del Reglamento de este Tribunal, 4 LPRA Ap. XXI-B.

El 3 de agosto de 2016, la entonces Procuradora General presentó su Informe ante nos. Primero, haciendo referencia a varios artículos de la Ley de la Judicatura, afirmó que el cargo de Directora de la OAT no era uno judicial, y que las acciones de la licenciada Vélez Colón debían ser evaluadas en virtud de los Cánones de Ética Profesional. Sin embargo, circunscribiéndose a evaluar el Canon 9, negó que la licenciada Vélez Colón lo hubiese violado. Sostuvo que dicho Canon solamente aplicaba a actuaciones incurridas en el transcurso de la práctica forense de la abogacía y que, aun cuando aplicara en otros contextos, las conductas que este Tribunal había sancionado en virtud del mismo habían sido "vejatorias, desafiantes, fraudulentas, de imputaciones de conducta antiética sin

fundamento en contra de un juez o que ponen en entredicho la sana administración de la justicia".[4] Así, concluyó que el ordenar una investigación de los miembros de este Tribunal no podía considerarse dentro ese grupo de conducta, que ello fue un intento de mantener la transparencia de la Rama Judicial ante el público, y que procedía que este Tribunal archivara la queja.

No obstante, contrario a lo que alegan la ex Procuradora y la licenciada Vélez Colón y, según surge claramente de los hechos esbozados en el acápite I de esta Resolución, la licenciada Vélez Colón incumplió con varios cánones del Código de Ética Profesional. Veamos.

### III

Como cuestión de umbral, no debe quedar duda de que la conducta de la licenciada Vélez Colón, mientras fungía como Directora de la OAT, debe ser evaluada al amparo del Código de Ética Profesional. Aunque esta era Jueza, el cargo que desempeñaba no era de carácter judicial ni comprendía el ejercicio de funciones judiciales. Así surge claramente del Artículo 2.012 de la Ley Núm. 201-2003, según enmendada, conocida como Ley de la Judicatura, 4 LPRA sec. 24j:

> Todo juez que sea designado para ocupar un puesto como funcionario de confianza en el servicio central de la Rama Judicial, como lo es el de Director Administrativo de los Tribunales y aquellos otros puestos que determine el Juez Presidente que no sean incompatibles con el cargo de juez, podrá servir por más de un (1) año en la posición de confianza y **quedará**

---

[4] Véase *Informe de la Procuradora General*, pág. 7.

**relevado de sus funciones judiciales** pero retendrá, a todos los fines pertinentes a su cargo, la condición y derechos de juez mientras desempeñe las funciones asignadas. Durante tal período devengará el sueldo correspondiente al puesto de confianza o el correspondiente a su cargo de juez, el que sea mayor, y una vez cese en el mismo, recibirá aquel sueldo que le habría correspondido si hubiera continuado las funciones ininterrumpidamente en su cargo de juez del Tribunal General de Justicia. Tal designación no afectará el transcurso del término de nombramiento correspondiente al cargo de juez del Tribunal General de Justicia que ostente ni los derechos al amparo de las disposiciones de las secs. 233 a 246 de este título, conocidas como la 'Ley del Sistema de Retiro de la Judicatura'. (Énfasis suplido).

Por otro lado, el Artículo 2.016 de la misma disposición legal, 4 LPRA sec. 24n, establece lo siguiente:

En la administración del Tribunal General de Justicia el Juez Presidente del Tribunal Supremo contará con la ayuda de un Director Administrativo de los Tribunales, quien también dirigirá la Oficina de Administración de los Tribunales. El Director Administrativo de los Tribunales **deberá ser abogado admitido al ejercicio de la abogacía**, será nombrado por el Juez Presidente y desempeñará su cargo a discreción de dicho magistrado. (Énfasis suplido).

Tal y como lo señaló la ex Procuradora General, el hecho de que solamente se requiera ser abogado (a) y no Juez (a) para desempeñar el puesto, demuestra que las funciones que se ejercen como parte del mismo no son de carácter judicial. Por tanto, la licenciada Vélez Colón, como abogada ejerciendo el puesto de Directora de la OAT, debía cumplir con todos los Cánones de Ética Profesional.

IV

El Criterio General de la Parte I - *Deberes del Abogado para con la Sociedad* del Código de Ética Profesional, 4 LPRA Ap. IX, exige que "todo abogado, como ciudadano y en su capacidad profesional, ya sea como juez, fiscal, abogado postulante, asesor o en cualquier otro carácter, actúe siempre de acuerdo al ideal expresado en el preámbulo de estos cánones". Dicho Preámbulo, el cual "consigna el ideal del buen abogado",[5] establece lo siguiente:

> En Puerto Rico, **donde el sistema democrático es fundamental para la vida de la comunidad y donde la fe en la justicia se considera factor determinante en la convivencia social, es de primordial importancia instituir y mantener un orden jurídico íntegro y eficaz, que goce de la completa confianza y apoyo de la ciudadanía.**

> La consecución de estos fines le impone a los miembros de la profesión jurídica, sobre quienes recae principalmente la misión de administrar la justicia y de interpretar y aplicar las leyes, el deber de desempeñar su alto ministerio con la mayor y más excelsa competencia, responsabilidad e integridad.

> En particular, el logro de estos fines le exige al abogado: (a) que entienda que el fin primordial de su función como jurista es el servicio a la sociedad, servicio que tiene que estar dirigido principalmente a lograr la existencia real de un orden jurídico íntegro y eficaz y que tiene que estar orientado esencialmente por los principios de vida democrática y de respeto a la inviolable dignidad del ser humano que rigen la convivencia

---

[5]   Véase *In re Sepúlveda, Casiano*, 155 DPR 193, 204 (2001) ("El Preámbulo del Código de Ética Profesional consigna el ideal del buen abogado").

social en el país; […] (d) que esté consciente de la importancia de evitar aún la apariencia de conducta impropia. (Énfasis suplido).

Cónsono con lo enunciado, el Canon 4 del Código de Ética Profesional, 4 LPRA Ap. IX, dispone que "[e]s deber de todo abogado laborar continuamente por el mejoramiento del ordenamiento jurídico y de los procesos e instituciones legales". Aunque este Tribunal no ha tenido la oportunidad de interpretar el alcance y la aplicación de dicho Canon, el Lcdo. Sigfrido Steidel Figueroa nos arroja luz sobre el particular:

> Objetivamente hablando, la idea de que el abogado contribuya al fortalecimiento del Derecho parece estar asociada a la noción de que el abogado debe cumplir sus responsabilidades de manera eficiente, con estudio riguroso y con fidelidad hacia su cliente. Si el rol del abogado es abogar, a partir del Derecho, a favor de las causas que asistan a una persona, al cumplir esa función, el abogado contribuye a la concreción de una sociedad más justa, y con ello, contribuye también al Derecho. Pero pudiéramos pensar que el fortalecimiento del Derecho **conlleva algo más**. Así, se pudiera plantear que el abogado contribuye al fortalecimiento del Derecho no sólo al cumplir su rol como abogado de una parte, sino también […] promoviendo que la Judicatura se nutra de los mejores candidatos, **protegiendo y defendiendo las instituciones de justicia, entre otras**. S. Steidel Figueroa, *Ética y Responsabilidad Disciplinaria del Abogado*, San Juan, Publicaciones JTS, 2010, pág. 298. (Énfasis suplido).

Por su parte, el Canon 9 del Código de Ética Profesional, 4 LPRA Ap. IX, establece lo sucesivo:

El abogado debe observar para con los tribunales una conducta que se caracterice por el mayor respeto. Ello incluye la obligación de desalentar y evitar ataques injustificados o atentados ilícitos contra los jueces o contra el buen orden en la administración de la justicia en los tribunales. En casos donde ocurrieren tales ataques o atentados, el abogado debe intervenir para tratar de restablecer el orden y la buena marcha de los procedimientos judiciales.

El deber de respeto propio para con los tribunales incluye también la obligación de tomar las medidas que procedan en ley contra funcionarios judiciales que abusan de sus prerrogativas o desempeñan impropiamente sus funciones y que no observen una actitud cortés y respetuosa.

Al interpretar dicho Canon, hemos expresado que los abogados tienen "la obligación de desalentar y evitar ataques injustificados contra los jueces o el buen orden de la administración de la justicia, **pues nada bueno augura a nuestra sociedad si perdemos el respeto hacia nuestras instituciones, máxime cuando se trata de una institución que su razón de existir es hacer justicia**". *In re Guzmán Guzmán*, 181 DPR 495, 514 (2011). (Énfasis suplido). No hay duda de que "el respeto hacia los tribunales y la obligación de desalentar y evitar ataques injustificados contra los jueces no sólo están entre los pilares fundamentales sobre los que se erige nuestro código deontológico, sino que también sobre ellos descansa la buena marcha de los procedimientos judiciales y la confianza que el público deposita en ellos". *In re Sánchez Ramos*, 174 DPR 453, 469 (2008). Por tanto, todos los

abogados tienen un "deber -como celosos custodios de la imagen de la justicia- de observar una conducta que se caracterice por el mayor respeto hacia los tribunales". *Íd*. Véase, también, *In re Markus*, 158 DPR 881, 884 (2003) (los abogados "nunca deben olvidar que tienen la obligación de mantener y promover la imagen de la justicia").

En ese sentido, los abogados no tienen licencia "para poner en entredicho o mancillar la dignidad de los jueces". *In re Cardona Álvarez*, 116 DPR 895, 906-907 (1986). Específicamente, hemos indicado lo siguiente:

> Debe considerarse justa causa para imponer sanciones disciplinarias toda imputación, oral o escrita, de la comisión de hechos inmorales o ilegales, formulada por un abogado, que no esté respaldada (warranted) por evidencia competente, que tienda a degradar o a afectar la dignidad, honorabilidad e integridad de los tribunales o de sus funcionarios o que puedan debilitar o destruir el respeto a o la confianza pública en los mismos. *In re Andreu Ribas*, 81 DPR 90, 119 (1959).

En cuanto al ámbito de aplicación del Canon 9, este Tribunal ha expresado que "está dirigido a regir la conducta del abogado litigante en corte". *In re Gaetán y Mejías*, 180 DPR 846, 861-862 (2011). Véanse, también, *In re Buso Aboy*, 166 DPR 49, 66 (2005); e *In re Saavedra Serrano*, 165 DPR 817, 829 (2005). Ahora bien, esas expresiones se hicieron en procesos disciplinarios en contra de jueces y con el único propósito de descartar la aplicación del Canon en contra de estos. Ello surge claramente del análisis que plasmamos en *In re Gaetán y Mejías*, supra:

De una simple lectura de este principio deontológico surge que se refiere a la conducta de los abogados ante los tribunales. Se trata de la imposición de un deber de comportamiento exclusivamente dirigido a los abogados y las abogadas, y no a los jueces y las juezas. De ahí que el canon imponga como deber que el abogado y la abogada desalienten ataques injustificados contra los jueces y las juezas o el buen orden en la administración de la justicia y no viceversa. Es decir, el Canon no impone a los jueces y a las juezas el deber de desalentar ataques injustificados contra los mismos jueces y juezas o el buen orden en la administración de la justicia. El deber impuesto es exclusivo para los abogados.

El Canon 9 del Código de Ética Profesional, *supra*, establece que los abogados y las abogadas tienen el deber de velar por la conducta y el comportamiento de los funcionarios y las funcionarias judiciales, entre los cuales resalta evidentemente la figura del juez o la jueza. Por ende, del propio lenguaje del Canon 9 surge de forma conspicua que éste se diseñó para regular el comportamiento de los abogados y las abogadas con relación al tribunal y a los jueces y las juezas; no así el comportamiento de los jueces y las juezas.

De hecho, este Tribunal ha sostenido que este precepto está dirigido a regular la conducta del abogado litigante en corte. *In re Busó Aboy*, supra, pág. 66; In *re Saavedra Serrano*, supra, pág. 829. En *In re Saavedra Serrano*, supra, la conducta antiética imputada al licenciado Saavedra ocurrió mientras éste fungía como juez. Allí, la Oficina de Administración de los Tribunales presentó una querella en la que se le imputó al licenciado Saavedra haber violado, *inter alia*, el Canon 9 de Ética Profesional, *supra*. Empero, la Comisión de Disciplina y de Separación del Servicio por Razón de Salud de Jueces del Tribunal de Primera Instancia y del Tribunal de Circuito de Apelaciones determinó que no hubo violación a dicho canon porque éste había sido diseñado para

regir la conducta de los miembros de la profesión legal en los tribunales y que, por lo tanto, no aplicaba a los jueces y a las juezas. Este Tribunal confirmó esa apreciación y sostuvo que el Canon 9 no le aplica a los jueces y las juezas; por ende, concluyó que las actuaciones del licenciado Saavedra no constituyeron violaciones al Canon. A igual conclusión llegó este Tribunal en *In re Busó Aboy*, supra.

Contrario a lo que plantean la licenciada Vélez Colón y la ex Procuradora General, nada de lo anterior sugiere que este Tribunal descartó la aplicación del Canon 9 a la conducta de los abogados fuera del litigio o de la práctica forense. Esa controversia nunca fue objeto de consideración. De ninguna forma este Tribunal avalaría el que los abogados pudiesen faltarles el respeto a los tribunales y atacarlos injustificadamente fuera de los procesos judiciales. Ello no tendría algún sentido. Muy bien lo expresó el licenciado Steidel Figueroa en su obra:

> El abogado tiene la obligación de tratar de manera respetuosa a los jueces y a los funcionarios y empleados judiciales. Esta norma no se deriva exclusivamente de los Códigos de Ética Profesional. Es una norma de civilidad mínima que abarca todo el ámbito social. El deber de respeto de los tribunales "trasciende los formalismos de llamar […] [a un juez] Honorable o Ilustrado". Este deber de civilidad, reconocido en el Código que regula los abogados en Puerto Rico, **se extiende a las relaciones formales e informales** entre los abogados y los jueces y demás empleados y funcionarios de la Rama Judicial. S. Steidel Figueroa, *op. cit.*, pág. 316. (Énfasis suplido).

Por último, el Canon 38 del Código de Ética Profesional, 4 LPRA Ap. IX, dispone lo siguiente:

> El abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia. En su conducta como funcionario del tribunal, deberá interesarse en hacer su propia y cabal aportación hacia la consecución de una mejor administración de la justicia.

Al interpretar dicho Canon, expresamos que todo abogado "debe actuar con el más escrupuloso sentido de responsabilidad que impone la función social que ejerce". *In re Toro Iturrino*, 190 DPR 582, 591 (2014). "[L]a mera apariencia igualmente lacera la imagen, la confianza y el respeto que nuestra sociedad deposita en la profesión y en las instituciones de la justicia". *In re Sierra Arce*, 192 DPR 140, 148 (2014).

V

De conformidad con los Cánones 4, 9 y 38 del Código de Ética Profesional, *supra*; así como con los deberes de su puesto como Directora de la OAT, la licenciada Vélez Colón estaba obligada a instituir y mantener un orden jurídico íntegro y capaz que gozara de la completa confianza y apoyo de la ciudadanía, a proteger las instituciones de justicia, a evitar ataques injustificados en contra de los jueces, a aportar hacia una mejor administración de la justicia y a evitar hasta la apariencia de conducta impropia. No obstante, la licenciada Vélez Colón no cumplió con ninguna de dichas obligaciones.

Sin justificación válida para ello y únicamente como secuela de las investigaciones que se estaban llevando a cabo en contra del Hon. Federico Hernández Denton, la licenciada Vélez Colón inició una investigación en contra de los miembros de esta Curia. Dicho acto, lejos de ser inofensivo, constituyó un ataque injustificado en contra de los Jueces y Juezas que en dicho momento componían este Tribunal, pues arrojó una inmerecida sombra de sospecha y puso en duda la honorabilidad e integridad de estos ante el público.

Ahora bien, para escudar su responsabilidad, la licenciada Vélez Colón indica ante nos que nunca tuvo la intención de iniciar una investigación en contra de los miembros de este Tribunal, que conocía que no estaba facultada para ello y que la extensión de la investigación fue definida en el contrato.

Aunque no dudamos que la licenciada Vélez Colón conocía que no estaba facultada para iniciar una investigación en contra de los integrantes de esta Curia, de un examen del contrato surge que este contiene una conveniente definición laxa y escueta del tipo de investigación que el licenciado López Cintrón llevaría a cabo, a saber, "una investigación […] a la luz de los señalamientos públicos que recientemente se han formulado sobre el uso de recursos y fondos públicos en la Rama Judicial". Dicha definición es tan amplia que no descarta que la investigación se dirigiera a los Jueces y Juezas de

este Tribunal. De hecho, el licenciado López Cintrón, en la carta a través de la cual renunció al contrato, informó que como parte de los trabajos investigativos realizados hasta esa fecha le había solicitado evidencia al ex Juez Presidente, Hon. Federico Hernández Denton, sobre unas imputaciones en su contra. Es decir, la investigación sí incluiría a los miembros de este Tribunal.

Por otro lado, iniciar, sin facultades para ello, una investigación relacionada a unas imputaciones en contra del Hon. Federico Hernández Denton, a quien esta respondía directamente, como mínimo, creó la apariencia impropia de que la licenciada Vélez Colón estaba utilizando el poder de su cargo y los fondos públicos para beneficiar solamente los intereses personales del Hon. Hernández Denton y obstaculizar las investigaciones que se estaban llevando en su contra. Más allá, la licenciada Vélez Colón hizo unas expresiones desafiantes e intimidantes que hacían referencia a un aparente estado de guerra en la misma Rama Judicial. Al expresar lo siguiente: "cuando uno se mete a la guerra quizás no recibe un tiro, pero un raspacito viene. Así que si hay raspazo, de eso se trata, de sanar y de curar", la licenciada Vélez Colón hizo claro los propósitos defensivos y ofensivos de la investigación. Ello, contrario a lo argüido por la ex Procuradora General en su Informe, de ninguna forma fomentó la transparencia y la buena imagen de los procedimientos de la Rama Judicial.

En fin, todos los actos de la licenciada Vélez Colón contribuyeron a perpetuar la desconfianza de los ciudadanos en los jueces y en las instituciones judiciales. Por tanto, estos no deben quedar impunes. Más aun, cuando esta cometió dichos actos mientras desempeñaba un puesto cuyo objetivo principal es asistir en la administración óptima de la Rama Judicial y de la Justicia. Sería muy peligroso y un mal precedente permitirle a una persona con semejante cargo en la Rama Judicial que cometa actuaciones que laceren tanto nuestro sistema de justicia.

Ciertamente, cuando la credibilidad y la imagen de la Rama Judicial están en juego, el silencio y la inercia no son opción. Sin lugar a dudas, existe una necesidad absoluta de trazar caminos que logren restaurar de manera efectiva la confianza de los ciudadanos en nuestro sistema de justicia. Para restaurar esa confianza, tenemos el compromiso ineludible de aprovechar cada oportunidad, por más sencilla que parezca, para descorrer el velo de la burocracia y rendirle cuentas al Pueblo.

De conformidad, si minimizamos los deberes éticos con los que debía cumplir la licenciada Vélez Colón y pasamos por alto sus actuaciones, contribuimos a la anulación de la fe y la confianza de los ciudadanos en nuestro sistema judicial. Véase *In re Hoffmann Mourino*, 194 DPR 179, 181 (2015) ("No se pueden minimizar los deberes éticos, ya que permitirlo incide sobre la fe y la confianza en nuestro sistema judicial").

Por los fundamentos esbozados, se censura enérgicamente a la licenciada Vélez Colón y se archiva la queja presentada en su contra.

Lo acordó el Tribunal y lo certifica el Secretario del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco emitió un voto particular de conformidad al cual se une el Juez Asociado señor Rivera García. La Jueza Presidenta Oronoz Rodríguez, la Juez Asociada señora Rodríguez Rodríguez y el Juez Asociado señor Colón Pérez emitieron por separado votos particulares disidentes. El Juez Asociado señor Feliberti Cintrón disiente con la siguiente expresión:

> Por entender que ya este Tribunal se había expresado en relación con la promovida y entonces jueza, Lcda. Sonia I. Vélez Colón, y su papel en la situación particular que diera base a la presente queja,[6] opino que lo que procedía en estos momentos era **archivar la queja sin más**. Es decir, los hechos relacionados con esta queja ya eran un capítulo cerrado, y así debió permanecer este asunto. Por consiguiente, respetuosamente disiento de la determinación mayoritaria de este Tribunal para disponer de la queja presentada contra la licencia Vélez Colón.

Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo

---

[6] Véanse: *In re* Aprob. Rs. y Com. Esp. Ind., 184 DPR 575 (2012); *In re* Miembros Com. Esp. Independiente, 184 DPR 507 (2012); *In re* Aprobación R. Proc. Esp. RJ, 184 DPR 500 (2012).

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | | Queja |
|---|---|---|
| Sonia I. Vélez Colón | AB-2012-46 | |

Voto particular de conformidad emitido por la Jueza Asociada señora Pabón Charneco al cual se une el Juez Asociado señor Rivera García.

En San Juan, Puerto Rico, a 14 de julio de 2017.

Aunque estoy completamente conforme con censurar enérgicamente a la licenciada Vélez Colón, entiendo que es menester expresarme brevemente sobre el lamentable trámite procesal de la queja ante este Tribunal.

La Regla 14(d) del Reglamento del Tribunal Supremo, 4 LPRA Ap. XXI-B, vigente a la fecha de la presentación de la queja, disponía claramente que cuando el(la) abogado(a) presentara su contestación a la queja disciplinaria, el Secretario remitiría la queja y la contestación "al Procurador o Procuradora General o al Director o Directora de la Oficina de Inspección de Notarías, respectivamente, para que, **dentro del término de treinta (30) días"**, se expresaran sobre estas e hicieran la recomendación que estimaran pertinente. (Énfasis suplido).

En este caso, sin justificación alguna, se esperó más de cuatro (4) años para referir la queja a la entonces

Procuradora General. La queja fue presentada el 6 de febrero de 2012 y no fue hasta el 8 de julio de 2016 que se refirió el expediente.[7] Dicha tardanza fue totalmente irrazonable e improcedente. La queja presentada en contra de la licenciada Vélez Colón debió ser atendida con la misma rapidez y rigurosidad que todas las quejas que se presentaron en el año 2012. Ni su nombre ni el cargo que ocupaba la licenciada podían ser impedimento para ello.

Ciertamente, atender con prontitud las quejas disciplinarias que se presentan, independiente de quién sea el (la) abogado (a), contribuye a la transparencia de los procedimientos y a la buena imagen de la justicia. Como total defensora de un sistema que goce de la completa confianza y apoyo de la ciudadanía, no me queda más que denunciar la tardanza injustificada en tramitar la queja de la licenciada Vélez Colón.

                         Mildred G. Pabón Charneco
                            Jueza Asociada

---

[7] Destacamos las diligencias realizadas por la Jueza Presidenta, Hon. Maite D. Oronoz Rodríguez, para que se continuaran los procedimientos en cuanto a la queja de la licenciada Vélez Colón.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Sonia I. Vélez Colón                    AB-2012-46

Voto particular disidente emitido por la Jueza Presidenta Oronoz Rodríguez

En San Juan, Puerto Rico, a 14 de julio de 2017.

No dudo que todos en este Tribunal deseamos un ordenamiento jurídico íntegro y eficaz; uno que goce de la confianza y apoyo completo de la ciudadanía. La Resolución que una Mayoría de este Tribunal emite hoy, señala que "existe una necesidad absoluta de trazar caminos que logren restaurar de manera efectiva la confianza de los ciudadanos en nuestro sistema de justicia".[8] Nadie puede estar en desacuerdo con tal aseveración. Ahora bien, nunca estaré conforme, ni guardaré silencio cuando se utilice el proceso disciplinario para coaccionar el respeto mediante

_____
[8] Resolución, pág. 22.

censuras enérgicas a abogados que realicen actos o expresen posturas con las cuales personalmente discrepamos. Cuando juramenté como Jueza Asociada y como Jueza Presidenta reconocí la crisis institucional por la que atraviesa la Rama Judicial y el Tribunal Supremo. Dije entonces y me reafirmo con una convicción mayor que: "[e]l momento que atravesamos es coyuntural para la reflexión, para observar a nuestro alrededor, calibrar y hacer una mirada introspectiva, severa y crítica, sin consideraciones o miedos".[9] Más adelante añadí que "[n]o podemos temerle a que se nos cuestione y se nos critique. Por el contrario, tenemos que estar abiertos a recibir cualquier crítica constructiva y a esperar que la ciudadanía nos exija cuando no estemos cumpliendo nuestra función".[10] Porque estoy convencida que la censura no es el mecanismo para atender esa crisis y porque, por el contrario, estas actuaciones de abuso de poder agudizan la crisis, disiento enérgicamente.

En este caso hay varias controversias jurídicas, algunas de las cuales no fueron atendidas por el Tribunal: **(1)** la legitimación activa de la promovente, véase In re Sánchez Ramos, 174 DPR 453 (2008); **(2)** la confidencialidad de los procesos disciplinarios, véase Regla 14 del Reglamento del Tribunal Supremo, 4 LPRA Ap. XXI-B; **(3)** el alcance de los Cánones 4, 9 y 38 como normas disciplinarias; **(4)** la expansión de dicho alcance mediante una Resolución;

---

[9] Ceremonia de Juramento de la Hon. Maite D. Oronoz Rodríguez, 195 DPR VII, XXXVI (2016).
[10] Íd., pág. XXXVII.

**(5)** el debido proceso en su vertiente procesal, pues la queja únicamente imputó violación al Canon 9 y el expediente solo cuenta con el *Informe de la Procuradora General*; **(6)** la distribución constitucional de las facultades administrativas y reglamentarias, y **(7)** el acecho malsano a la libertad de expresión, la crítica y la investigación de la función y la administración pública, entre otras. Además, son muchísimas las razones por las cuales la Resolución del Tribunal es errónea en Derecho. Ahora bien, enlistar esas faltas, como un árbitro en un partido concluido, nada cambia el resultado. Esta acción solo mantiene la juridificación de una controversia que hace mucho dejó de serlo. Por consiguiente, prefiero exponer por qué la censura del Tribunal es peligrosa y no se puede tolerar en una sociedad que se considere democrática.

En resumen, la conducta "antiética" que se le imputó a la Lcda. Sonia I. Vélez Colón es la siguiente: cuando fungía como Directora de la Oficina de la Administración de Tribunales (OAT) -bajo la presidencia del Hon. Federico Hernández Denton- contrató al Lcdo. César López Cintrón. Este realizaría una investigación independiente sobre el uso de fondos públicos en la Rama Judicial. Posteriormente, en una entrevista, la licenciada expresó que "cuando uno se mete a la guerra quizás no recibe un tiro, pero un raspacito viene. Así que si hay raspazo, de eso se trata, de sanar y de curar".

De lo anterior, la Mayoría deduce dos cosas: (1) que el que la Ex Directora de la OAT investigara a los miembros del Tribunal Supremo, entre ellos al Ex Juez Presidente, constituyó un ataque injustificado, y (2) que iniciar, sin facultades para ello, una investigación en contra de su supervisor, creó la apariencia impropia de que utilizó la investigación para obstaculizar las investigaciones de otras Ramas de gobierno. Finalmente, catalogó las expresiones de la licenciada como desafiantes e intimidantes.

Puedo entender que entre nosotros existan diferencias de criterio sobre si la Ex Directora de la OAT tenía la facultad de realizar la investigación. También puedo comprender que algunos Jueces y Juezas de este Tribunal estén molestos e insatisfechos por cómo se condujo la contratación y por algunas expresiones que se hicieron. Eso es natural en un cuerpo colegiado. Ahora bien, me alarma que la Mayoría utilice el proceso disciplinario para arremeter en contra de la licenciada, solo porque tienen una incomodidad personal con los hechos. A fin de cuentas, estamos expuestos -- porque eso es vivir en una democracia-- a que nuestros ciudadanos nos juzguen, nos critiquen (con o sin razón) y nos cuestionen. Eso también es bajarse del estrado y rendir cuentas a quienes único servimos. Una cosa es interpretar que la Ex Directora de la OAT excedió sus facultades y hacer un juicio personal sobre cuáles fueron sus razones. Otra muy distinta es utilizar esas meras creencias personales,

válidas o no, para disciplinar a Sonia I. Vélez Colón en su carácter de abogada.

¿Qué acto de la licenciada Vélez Colón es censurable? La contratación del licenciado López Cintrón para investigar el uso de fondos del País por la Rama Judicial, era parte ineludible de sus responsabilidades. Por otro lado, las expresiones hiperbólicas que trae la Mayoría -sin que la licenciada pueda defenderse- están protegidas clara y contundentemente por la libertad de expresión. La única imputación restante es que la licenciada presuntamente utilizó el proceso investigativo para beneficiar los intereses personales del Hon. Federico Hernández Denton. ¿Esa imputación se probó con prueba clara, robusta y convincente? Del expediente no surge la más mínima prueba que esa fuera la intención. Todo se reduce a la apreciación personal de algunos jueces y ningún proceso judicial --mucho menos uno disciplinario-- debe prestarse para eso.

Ante la arbitrariedad y la falta de justificación de una Mayoría, lo único que resta es analizar qué premisas subyacen la censura enérgica. La Resolución comienza citando las advertencias problemáticas de In re Sánchez Ramos, supra, pág. 469. Luego nos recuerda el "deber que tenemos todos los miembros de la profesión jurídica" de lograr "la completa confianza y apoyo de la ciudadanía".[11] Más adelante destaca que los actos de la licenciada "contribuyeron a perpetuar la desconfianza de los ciudadanos  en los jueces y

_____
[11] Resolución, pág. 1.

en las instituciones judiciales".[12] Entre líneas podemos inferir el siguiente mensaje: si eres un abogado e investigas al Tribunal de manera que "arro[je] una inmerecida sombra de sospecha" o si te expresas de forma que se considere "desafiante e intimidante", te expones a una sanción disciplinaria. Peor aún, si afectas la confianza del pueblo en la Rama Judicial, serás censurado enérgicamente por el Foro que debió ser garante de tu derecho a expresarte con libertad. Está de más decirlo, pero temo que estas advertencias disuadan a los abogados de asumir una postura crítica y activa en contra del Tribunal Supremo y de la Rama Judicial. Como institución debemos propiciar esta actitud y no desalentarla, incluso y especialmente cuando nos parezcan injustas o incómodas personalmente. Nuestro rol democrático así lo requiere.

En una columna titulada "Poder sin legitimidad", el Profesor Efrén Rivera Ramos expuso:

> El Tribunal Supremo depende para su legitimidad de la fuerza de sus argumentos, del respeto que susciten sus decisiones, de la acogida que logre, en su conjunto, tanto en la comunidad jurídica como entre la población general. Si ese respeto se desvanece, sufre su legitimidad. Ese respeto, sin embargo, no puede simplemente exigirse, sin más. Se lo tienen que ganar los miembros del alto foro con su proceder.
> La pregunta que tienen que hacerse quienes gobiernan es de qué vale el control sin legitimidad. Podrá dejar beneficios inmediatos, pero pronto comenzará a perder terreno político y moral.
> Cuando lo que importa es el poder por el poder mismo, eventualmente se tendrá que recurrir a la coacción para conservarlo. Y la coacción cruda a la larga genera mayor erosión de la legitimidad.

---

[12] Íd., pág. 21.

Ello conduce inevitablemente a una gran soledad. La soledad del poder a secas.

Hoy, una Mayoría optó por exigir el respeto a golpes, en lugar de ganárselo. En vez de restaurar la confianza, la perdió de nuevo. Al censurar el supuesto efecto de la licenciada Vélez Colón en la confianza y apoyo de la ciudadanía, comete el mismo acto que pretende reprobar. Recurre, pues, al poder coercitivo que otorgan cinco votos para conseguir una legitimidad artificial, censurando a aquellos abogados que asuman su rol de manera distinta al predeterminado por el Tribunal Supremo. Solo restauraremos la confianza cuando dejemos de ejercer el poder a secas, porque contamos con cinco votos y los deseos de censurar por riñas del pasado.

Maite D. Oronoz Rodríguez
Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | |
|---|---|
| Sonia Ivette Vélez Colón | **Núm.** AB-2012-0046 |

VOTO PARTICULAR DISIDENTE emitido por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 14 de julio de 2017

No suelo destacar lo obvio. De ordinario, señalar lo 'harto conocido' es innecesario. Se torna superfluo. Pero a veces, ante pronunciamientos que constituyen abstracciones injustas del Derecho, no queda otra alternativa que repasar lo elemental.

*Es obvio*, como asunto de umbral, que la Lcda. Zaida Hernández Torres, quejosa en el procedimiento de autos, no tenía legitimación alguna para presentar una queja contra la Lcda. Sonia Ivette Vélez Colón por los hechos alegados. Ya hemos establecido, en más de una ocasión, que una parte promovente en un proceso disciplinario es aquella que ha impulsado la queja disciplinaria **y que, a su vez,** tiene conocimiento personal y **legitimación activa** con relación a la queja. *López Feliciano, Ex parte*, 191 DPR 882, 891-92 (2014); *In re MMT, MITA y LST*, 191 DPR 668, 675 (2014). La Jueza Asociada Pabón Charneco abundó sobre ello al explicar que "una 'parte promovente' es aquella que promueve o impulsa una acción disciplinaria por haber estado directamente involucrada en los sucesos que motivaron la

presentación de una Queja." *In re MMT, MITA y LST*, 191 DPR en la pág. 677 (Op. Conformidad, Pabón Charneco, J.). El requisito de legitimación activa en los procedimientos disciplinarios garantiza que el procedimiento disciplinario lo utilizarán personas que tienen un interés real y justificado en ver disciplinado a un abogado. *López Feliciano, Ex parte*, 191 DPR en la pág. 892. Como sabemos todos, la licenciada Hernández Torres no tenía relación alguna con las alegaciones que plasmó en su queja.[13] Su único interés en la controversia, a mi entender, fue su discusión de la misma por su programa radial de análisis político. Difícilmente podríamos llamarle a eso legitimación activa.[14]

*Es obvio*, además, que el Canon 9 no da para tanto. La función específica del Canon 9, como lo hemos interpretado reiteradamente, es regular la conducta de los abogados ante los foros judiciales. Los ejemplos sobran. *Véase, por ejemplo, In re Gaitán y Mejías*, 180 DPR 846 (2011); *In re Busó Aboy*, 166 DPR 49 (2005); *In re Saavedra Serrano*, 165 DPR 817 (2005).[15] La licenciada Vélez Colón, en su labor como

---

[13] Por otro lado, si bien el Canon 7 de Ética Judicial le otorga legitimación a los jueces para promover procedimientos **cuando los hechos les consten personalmente**, 4 LPRA Ap. IV-B C. 7, la licenciada Hernández Torres ya no es juez ni acreedora de esa legitimación estatutaria.

[14] ¿Qué explicación razonable hay para el relajamiento de este requisito? No sabemos. No lo explica la Resolución ni la Jueza Asociada Pabón Charneco en su Opinión de conformidad. ¿La ausencia de explicación, implica arbitrariedad?

[15] Aún si fuéramos a extender la aplicación del Canon 9 a toda la práctica profesional de la abogacía, y, más allá, aún si consideráramos que la labor administrativa que ejercía la licenciada Vélez Colón como Directora de la

Directora de la Oficina de Administración de los Tribunales, no estaba en posición de incurrir en una violación del Canon 9. La plasticidad que hoy se le imparte al Canon 9, nuevamente, sin justificación jurídica razonable, me obliga a recordarle a la mayoría el viejo refrán: "Mucho estirar hace quebrar".

*Es obvio*, por último, que constituye una burda violación al debido proceso de ley imputarle a una querellada la violación de dos cánones de ética profesional sin que la alegada violación de éstos figurara en etapa alguna del procedimiento disciplinario. Más que burda, esta acción está encontrada con los valores elementales de juego limpio. Hemos resuelto repetidamente que el abogado tiene un interés propietario en el ejercicio de su profesión, por lo cual son acreedores de las garantías que ofrece la vertiente procesal del debido proceso de ley. *In re Rodríguez Plaza*, 182 DPR 328, 341 (2011); *In re Ríos Ríos*, 175 DPR 57, 74-75 (2008). Pertinentemente, en *In re Pérez Riveiro* declaramos que:

---

Oficina de Administración de los Tribunales era una práctica profesional de la abogacía, el razonamiento del Tribunal se queda corto. Se queda corto porque ignora por completo los criterios que hemos elaborado, hace ya décadas, para examinar la conducta de los abogados cuando critican a o mancillan la reputación de los tribunales. Para ello, hemos desarrollado tres criterios, a saber: (1) si aunque equivocado, el abogado creía en la validez de las imputaciones, (2) si aunque los hechos no eran ciertos, tenía motivos fundados o causa probable para creer que eran veraces y (3) si la imputación no fue hecha maliciosamente con el propósito deliberado de mancillar la reputación del tribunal. *In re Crespo Enríquez*, 147 DPR 656, 664 (1999); *In re Cardona Álvarez*, 116 DPR 895, 907 (1986); *In re Martínez, Jr.*, 108 DPR 158, 163 (1978); *In re Andreu Ribas*, 81 DPR 90, 120 (1959).

> [L]a práctica de enmendar tácitamente la querella, a base de la prueba presentada, para sancionar a un abogado por violaciones al Código de Ética Profesional que no fueron imputadas en la querella es incompatible con la naturaleza de los procedimientos disciplinarios de los abogados y viola el debido proceso de ley. 180 DPR 193, 200 (2010).

La Resolución que suscriben cinco jueces discute extensamente los Cánones 4, 4 LPRA Ap. IV-B C. 4, y 38, 4 LPRA Ap. IV-B C. 38, sin que éstos figuraran en la queja original de la licenciada Hernández Torres o en el Informe rendido por la Procuradora General. La Resolución concluye que la querellada incumplió con las obligaciones impuestas por estos cánones. Llegar a esa conclusión a base de conjeturas, sin darle una oportunidad a la licenciada Vélez Colón para defenderse, es una crasa violación del debido proceso de ley y desdice de quienes suscriben tal Resolución.[16]

No debería tener que recordarle a la mayoría que la legitimación activa y el debido proceso de ley son axiomas elementales de nuestro sistema de Justicia. Considero que no procedía ignorarlos, de manera acomodaticia, en el

---

[16] Este caso refleja un proceso más propio de los llamados *kangaroo courts* que aquellos que deben primar en un ordenamiento donde el imperio de la ley sea un valor estimable. Tal vez contagiados por el recuerdo del 14 de julio de 1789, que hoy conmemoramos, se quiso llevar a la guillotina a la licenciada Vélez Colón. *À propos*, resulta curioso que los jueces conformes con la censura que hoy autoriza el Tribunal decidieran manifestar su sentir mediante una Resolución y no una Opinión *Per curiam*. ¿Será que son conscientes del nefasto precedente que de otra manera establecerían? Sobre ello, sólo observo que sientan otro precedente más perverso al permitir excepciones arbitrarias en casos de especial interés, apartándose de principios fundamentales cuando el afán de castigo ciega la razón.

procedimiento contra la licenciada Vélez Colón. Por lo demás, las conclusiones de hecho y derecho que hace el informe de la Procuradora General disipan cualquier duda sobre la eticidad de la conducta de la licenciada Vélez Colón. Consecuentemente, lo anejo de forma íntegra a mi voto disidente.

A manera de conclusión, invito a mis compañeros a reflexionar sobre su función. El poder temporero que como jueces detentamos, no puede utilizarse para mancillar reputaciones ni para ajustes de cuentas. No hay cualidad más apremiante e imprescindible que la imparcialidad. La Justicia y la parcialidad no van nunca de la mano. El juez tiene que ser capaz de colocarse por encima de las partes, en plano trascendente, para lograr impartir justicia cumplida. Pero tiene también que depurarse de sus pasiones y desterrar todo género de motivaciones subjetivas pues, "[s]i la pasión [le] turba, si cualquier hostilidad [le] emponzoña",[17] habrá fracasado en su ministerio y su dictamen no podrá ser jamás justo e imparcial.

En consideración a todo lo anterior, disiento.


                                        Anabelle Rodríguez Rodríguez
                                               Juez Asociada


---

[17] FRANCISCO SOTO NIETO, COMPROMISO DE JUSTICIA 358 (1977).

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Sonia I. Vélez Colón                    AB-2012-046


VOTO PARTICULAR DISIDENTE emitido por el Juez Asociado señor Colón Pérez.


En San Juan, Puerto Rico, a 14 de julio de 2017.

Por considerar que la tinta y el papel de este Tribunal no deben utilizarse para mancillar la reputación de aquellas personas que, asumiendo los sacrificios personales y profesionales que ello representa, le han servido bien a nuestro país desde el servicio público, disiento del vergonzoso curso de acción seguido por una mayoría de este Tribunal en el presente caso. Veamos.

I.

El asunto ante nuestra consideración se originó el 6 de febrero de 2012, mediante la presentación de una queja en contra de la licenciada Sonia I. Vélez Colón (en adelante "licenciada Vélez

Colón") por parte de la licenciada Zaida R. Hernández Torres. Mediante la misma, la licenciada Hernández Torres alegó que la licenciada Vélez Colón violentó el Canon 9 de Ética Profesional, 4 LPRA Ap. IX, al supuestamente ordenar -- mientras fungía como Directora Administrativa de los Tribunales -- una investigación en contra de todos los Jueces y Juezas de este Tribunal. La licenciada Hernández Torres arguyó que tal investigación se ordenó con el propósito de desviar la atención, y la correspondiente investigación, de ciertas alegaciones que dos alguaciles de la Rama Judicial hicieran en relación al alegado uso ilícito de personal, propiedad y fondos públicos por parte del entonces Juez Presidente de este Tribunal, Hon. Federico Hernández Denton.

Así las cosas, luego de contar con la contestación de la licenciada Vélez Colón a la queja presentada en su contra, a tenor con la Regla 14(d) del Reglamento de este Tribunal, 4 LPRA Ap. XXI-B, la Secretaría de este Foro remitió el expediente en cuestión a la Oficina de la entonces Procuradora General, Hon. Margarita Mercado Echegaray (en adelante "Procuradora General"), para su correspondiente evaluación e informe.

Cumpliendo con lo ordenado, el pasado 3 de agosto de 2016, la entonces Procuradora General nos presentó su informe. En síntesis, la Procuradora General entendió que la licenciada Vélez Colón no incurrió en violaciones a los Cánones de Ética Profesional, *supra*, y por consiguiente, la

queja presentada en su contra debía archivarse. En particular, la Procuradora General analizó la conducta de la licenciada Vélez Colón a la luz del Canon 9, *supra,* y concluyó que el mismo opera en actos u omisiones realizadas durante la práctica forense de la abogacía y que, aun de aplicar en otros contextos, no existe precedente por parte de este Tribunal de sancionar -- en virtud de dicho Canon -- la conducta de la licenciada Vélez Colón. Por último, fundamentó su posición en que la contratación del licenciado César López Cintrón, por parte de la licenciada Vélez Colón, para realizar la aludida investigación, fue un intento de mantener la transparencia de la Rama Judicial ante el País. Sobre lo anterior, concluyó la Procuradora General, no existía prueba en contrario. Tiene razón la Procuradora General.

Siendo ello así, somos de la opinión que en el presente caso -- contrario a lo resuelto por una mayoría de este Tribunal -- procedía, sin más, el archivo de la queja ante nuestra consideración. Nos explicamos.

## II.

Como es sabido, el *quantum* de prueba requerido en todo proceso disciplinario contra un juez o jueza, abogado o abogada, es el de prueba clara, robusta y convincente. *In re Ruiz Rivera*, 168 DPR 246, 254 (2006); *In re Rodríguez Mercado*, 165 DPR 630, 64 (2005); *In re Caratini Alvarado,* 153 DPR 575, 584-85 (2001). Al presente, "*[n]o existe una definición precisa de dicho criterio probatorio. Sin*

*embargo, hemos reconocido que consiste de una carga probatoria mucho más sólida que la preponderancia de la evidencia, pero menos rigurosa que la prueba más allá de toda duda razonable. También la hemos descrito como aquella [prueba] que produce en un juzgador de hechos una convicción duradera de que las contenciones fácticas son altamente probables".* In re Rafael Vissepó Vázquez, 2016 TSPR 211, 196 DPR ____ (2016) (Op. Concurrente), *In re Salas Arana*, 188 DPR 339, 347 (2013); *In re Martínez Almodóvar*, 180 DPR 805, 820 (2011); *In re Ruiz Rivera, supra.*

Cabe recordar que dicho quantum de prueba encuentra su razón de ser en que un proceso disciplinario puede tener como resultado la pérdida del título profesional del querellado. Esto es, su derecho fundamental a ganarse su sustento podría verse afectado; por ello, se exige una mayor carga probatoria que la requerida en otros casos civiles. Véanse *In re Salas Arana, supra,* pág. 346; *In re Soto Charraire*, 186 DPR 1019 (2012); *In re Irizarry Vega*, 176 DPR 241 (2009).

Es pues, de conformidad con el *quantum* de prueba requerido por la jurisprudencia antes reseñada, que procedemos a evaluar la conducta desplegada por la licenciada Vélez Colón. Ello, claro está, a la luz de los preceptos deontológicos que regulan la profesión de la abogacía.

En este sentido, resulta en extremo pertinente citar *in extenso* el Canon 9 de los de Ética Profesional; precepto que una mayoría de este Tribunal entiende la licenciada Vélez Colón infringió. El referido Canon dispone lo siguiente:

> El abogado [y abogada] debe observar para con los tribunales una conducta que se caracterice por el mayor respeto. Ello incluye la obligación de desalentar y evitar ataques injustificados o atentados ilícitos contra los jueces o contra el buen orden en la administración de la justicia en los tribunales. En casos donde ocurrieren tales ataques o atentados, el abogado [y abogada] debe intervenir para tratar de restablecer el orden y la buena marcha de los procedimientos judiciales.
>
> El deber de respeto propio para con los tribunales incluye también la obligación de tomar las medidas que procedan en ley contra funcionarios judiciales que abusan de sus prerrogativas o desempeñan impropiamente sus funciones y que no observen una actitud cortés y respetuosa. 4 LPRA Ap. IX.

Según ha sido interpretado por este Tribunal, el campo de acción de dicho precepto ético es limitado. Primeramente, versa sobre asuntos relacionados a la práctica profesional de la abogacía; *In re Busó Aboy,* 166 DPR 49 (2005); *In re Villamil Higuera*, 188 DPR 507 (2013); *In re Rivera Trani*, 188 DPR 454 (2013), y -- particularmente relevante a la controversia ante nos -- regula los actos u omisiones dirigidos a mancillar el honor de los tribunales durante el ejercicio de la práctica forense. *In re Valentín Custodio*, 187 DPR 529 (2012); *In re Guzmán,* 181 DPR 495 (2011); *In re González Carrasquillo,*

164 DPR 813 (2005); *In re Markus*, 158 DPR 881 (2003); *In re Crespo Enriquez*, 147 D.P.R. 656 (1999).

Es, precisamente, a la luz del marco jurídico antes expuesto -- y no de otros elementos ajenos al mismo -- que debemos disponer de la controversia ante nuestra consideración.

III.

En el presente caso, como mencionamos anteriormente, la licenciada Hernández Torres presentó una queja ante este Tribunal donde sostuvo que la licenciada Vélez Colón violentó el Canon 9 de Ética Profesional, *supra*, al alegadamente ordenar una investigación en contra de todos los Jueces y Juezas de este Alto Foro, con el supuesto propósito de desviar la atención de ciertos señalamientos que habían realizado dos alguaciles sobre el alegado uso ilícito de personal, propiedad y fondos públicos por parte del entonces Juez Presidente, Hon. Federico Hernández Denton.

En su contestación a la mencionada queja, de forma muy respetuosa, la licenciada Vélez Colón aceptó haber ordenado una investigación en la Rama Judicial y haber contratado los servicios profesionales del licenciado César López Cintrón para que le asistiera en esta tarea. Ahora bien, contrario a la errada conclusión a la que llega una mayoría de este Tribunal en el día de hoy, la licenciada Vélez Colón sostuvo que, al ordenar la investigación en cuestión, no pretendió, en forma alguna, atacar a los Jueces y Juezas

que componen este Alto Foro. Por el contrario, la letrada sostuvo que su intención -- en todo momento -- fue realizar una investigación independiente, toda vez que los señalamientos formulados por los alguaciles impactaban a la Oficina de Administración de los Tribunales. Así, como ya vimos, también lo concluyó la Procuradora General.

Como bien señala la Procuradora General en su Informe presentado a este Tribunal, el contrato otorgado por la licenciada Vélez Colón no se perfeccionó con el propósito de investigar a ningún Juez o Jueza de este Tribunal ni imputaba acto antiético alguno contra éstos últimos. Según razonó la Procuradora General, del propio contrato se desprende que su objetivo era investigar la utilización de recursos y fondos públicos en toda la Rama Judicial, sin señalar persona o acto en particular. En el expediente ante nos, no existe un ápice de prueba que contradiga de forma alguna la correcta y fundamentada conclusión a la que llega la Procuradora General.

Por otro lado, cabe recalcar que en virtud de la Orden Administrativa Núm. OA-JP-2009-108 de 18 de mayo de 2009, la licenciada Vélez Colón, como Directora Administrativa de los Tribunales, tenía el deber y obligación de "[t]omar todas aquellas medidas necesarias […] relacionadas con la contabilidad y el control de la propiedad de la Rama Judicial". Por tanto, la letrada razonablemente entendió que, ante las circunstancias particulares ante su consideración, y en virtud de las facultades que le fueron

delegadas, le competía actuar. Así correctamente lo hizo, al ordenar la investigación a la que hemos hecho referencia y que, al parecer, ocasionó cierto malestar en algunos miembros de este Tribunal.

Contrario a lo intimado por una mayoría de este Tribunal, estimo que la licenciada Vélez Colón sí hubiese faltado a los deberes de su posición de haber optado por cruzarse de brazos ante las imputaciones relacionadas al alegado uso ilícito -- por parte de miembros de la Rama Judicial -- de personal, propiedad y fondos públicos pertenecientes a esta rama de gobierno. Ello, por tratarse de una imputación que, de haber sido cierta, indudablemente, hubiese lesionado la confianza del Pueblo en la Rama Judicial y hubiese puesto en tela de juicio la integridad de sus miembros. Siendo ello así, no podemos objetivamente concluir que al ordenar una investigación independiente, la licenciada Vélez Colón mancilló el honor del Tribunal o violentó el Canon 9 de Ética Profesional, *supra*.

Otra sería nuestra postura si la licenciada Vélez Colón hubiese actuado en contravención a una prohibición expresa por parte de este Tribunal. Sin embargo, ese no es el caso, pues no fue hasta el 1 de febrero de 2012 -- esto es, posterior a la iniciativa de la letrada -- que este Tribunal ordenó la recisión del contrato suscrito por el licenciado López Cintrón y aprobó las Reglas para los Procedimientos de Investigaciones Especiales Independiente

de la Rama Judicial. Véase *In re Aprobación de las Reglas para los Procedimientos de Investigaciones Especiales Independiente de la Rama Judicial,* 184 DPR 500 (2012).

Previo a la aprobación de la referida reglamentación, la licenciada Vélez Colón, al ordenar una investigación sobre la utilización de fondos públicos, cumplió con uno de los deberes que le imponía su cargo. Cumplir con tales cometidos, no constituye, ni puede constituir, una violación a los Cánones de Ética Profesional, *supra*. Cualquier contención en contrario resulta en un absurdo.

IV.

En fin, como se puede apreciar, la actuación de la licenciada Vélez Colón, en todo momento, estuvo dirigida a investigar alegaciones que, por su naturaleza, arropaban a la Oficina de la Administración de los Tribunales. A través de su investigación, la letrada precisamente intervino -- mediante un mecanismo objetivo -- con el fin de restablecer el orden y brindar el curso de acción correcto a los que posteriormente resultaron ser **ataques injustificados** contra el entonces Juez Presidente de este Tribunal, Hon. Federico Hernández Denton, con el único fin de forzar artificialmente una vacante en la Presidencia de este Tribunal. Así quedó demostrado mediante el resultado de las investigaciones que al respecto condujeron otros organismos del Estado, ajenos a la Rama Judicial. Si injustificado y malintencionado fue el proceso al que se expuso al entonces Juez Presidente Hernández Denton, más injustificada e

infundada resulta ser la queja presentada por la licenciada Hernández Torres en contra de la entonces Directora Administrativa de los Tribunales y por ende, el proceso disciplinario al que esta ha sido sometida.

No procede, pues, avalar con nuestro voto tan lamentable y motivado proceder. **Repetimos: el papel y la tinta de este Tribunal no deben utilizarse para mancillar las reputaciones de aquellas personas que, asumiendo los sacrificios personales y profesionales que ello representa, le han servido bien a nuestro País desde el servicio público.**

V.

A la luz de lo antes expuesto, resulta indiscutible que la conducta desplegada por la licenciada Vélez Colón no constituye una violación al Canon 9 de los de Ética Judicial, *supra.* Por tanto, procedía archivar, sin procedimiento ulterior, la queja ante nos.

Licenciada Vélez Colón, desde nuestro prisma -- y en sus pasados desempeños como Jueza del Tribunal de Primera Instancia, como Jueza del Tribunal de Apelaciones y como Directora Administrativa de los Tribunales -- puede sentir la satisfacción que solo genera el cumplimiento con lo debido, que en su caso, se traduce a un trabajo bien hecho.

> Ángel Colón Pérez
> Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | | |
|---|---|---|
| Sonia I. Vélez Colón | AB-2012-46 | Queja |

RESOLUCIÓN
NUNC PRO TUNC

En San Juan, Puerto Rico, a 20 de julio de 2017.

Se enmienda nuestra Resolución de 14 de julio de 2017 a los únicos efectos de hacer constar lo siguiente:

El Juez Asociado señor Feliberti Cintrón disiente, haciendo constar la siguiente expresión:

> Por entender que ya este Tribunal se había expresado en relación con la promovida y entonces jueza, Lcda. Sonia I. Vélez Colón, y su papel en la situación particular que diera base a la presente queja,[18] opino que lo que procedía en estos momentos era **archivar la queja sin más**. Es decir, los hechos relacionados con esta queja ya eran un capítulo cerrado, y así debió permanecer este asunto. Por consiguiente, respetuosamente disiento de la determinación mayoritaria de este Tribunal para disponer de la queja presentada contra la licenciada Vélez Colón.

Lo acordó el Tribunal y lo certifica su Secretario.

Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo

---

[18] Véanse: *In re* Aprob. Rs. y Com. Esp. Ind., 184 DPR 575 (2012); *In re* Miembros Com. Esp. Independiente, 184 DPR 507 (2012); *In re* Aprobación R. Proc. Esp. RJ, 184 DPR 500 (2012).